## 7591

### STATE v. BETHUNE.

1. The hour of opening court is within discretion of trial Judge.
2. Pleadings.—An indictment need not show on its face the name of the Judge and jury presenting it.
3. Trial—Continuance.—Where the Court has not been informed until date set for trial of desire on part of defendant to move for change of venue, it is not error to put him on trial on third day after arraignment.
4. Jurors.—Extent of examination of jurors on *voir dire* is within discretion of trial Judge, and it is held not to be abuse thereof to rule out a question "whether in spite of the fact that the defendant is a negro he would be influenced thereby in passing on the evidence?" Mr. Justice Woods *dissents if peremptory challenges had been exhausted.*
5. Ibid.—Party not exhausting his peremptory challenges is not in a position to claim there was any error in presenting a juror.
6. Trial.—Refusal to give defendant's attorney time to see some of his witnesses on eve of recess on last day of Court, when Court was pressed for trial, is not showing undue haste inconsistent with a fair and impartial trial.
7. Evidence.—That the bullet in the head of deceased weighed more than those in the weapon in possession of defendant does not show the verdict was contrary to the weight of the evidence where it conflicts with the positive evidence and numerous other circumstances in the case.
8. Ibid.—A catalogue of a firearm company, intended to show the manufacture of a pistol carrying a certain weight ball, has no status as original evidence.

9. CHARGE.—Condensing a number of requests in the general charge without referring to them specifically after announcement of such intention and assent of counsel is not error unless some sound and applicable principal of law requested was not given in the general instructions.

10. IBID.—A declaration by the Court, "What I am going to say to you is going to be said of the witnesses and not hypothetical cases, but as to the testimony brought out in the case," is not a charge on the facts if not followed by stating any matter in issue or the opinion of the Judge as to the facts.

11. IBID.—After clearly submitting to the jury the issue whether Bethune killed Mims, it is not a statement of the fact that Bethune killed Mims to say, "If Bethune killed Mims in self-defense, you should acquit him."

12. IBID.—Appellant cannot complain of statement of matter in issue according to his contention.

13. MURDER—PROVOCATION.—No WORDS however opprobrious will constitute that legal provocation which is necessary to reduce a killing from murder to manslaughter.
   *State* v. *Rowell,* 75 S. C., 494, and *State* v. *Hunter,* 82 S. C., 152, *distinguished from this case.*

14. CHARGE—SELF-DEFENSE.—The instruction that if the deceased struck defendant that would reduce the offense to manslaughter does not affect the plea of self-defense, as that was fully covered in another part of the charge.

15. IBID.—RECOMMENDATION TO MERCY.—While it is better to simply call the attention of the jury to the statute relating to recommendation to mercy, yet the remarks here that it is proper except where the facts make the murder so bold and awful as to merit death, was not calculated to wrongfully influence the jury, nor was such charge on the facts, as such recommendation presupposes a finding of murder.

16. REHEARING refused.

Before GAGE, J., Manning, June, 1909. Affirmed.

Indictment against Willie Bethune for murder of G. B. Mims. From sentence, defendant appeals.

*Mr. A. A. Manning,* for appellant, cites: *Examination of jurors:* Code, 1902, 2821; art. I, sec. 17, U. S. Con., 15 Am., sec. 1; 12 Ency., 359; 57 Cal., 102; McClellan's Dig. Fla. Stat., sec. 10; Code, 1902, 2944; 27 Fla., 370; 1 Bail., 651. *Treachery of deceased:* 41 S. E., 803; 12 Rich., 430;

29 S. C., 34; 68 S. C., 304. *Opprobrious words:* 75 S. C., 494; 82 S. C., 152. *Self-defense:* 13 Bush., 246; 77 Cal., 577; 67 Cal., 646; 65 Cal., 129; 63 Cal., 544. *Offensive language:* 164 U. S., 546. *Resisting unlawful arrest:* Secs. 2, 3 Crim. Code; 53 S. C., 150; 2 Ency., 852. *Self-defense by one committing misdemeanor:* 70 Ia., 657; 69 Ia., 420; 59 Am. R., 31. *Bringing on difficulty with felonious purpose:* Crim. Code, 175; 56 S. C., 415. *Proof of self-defense:* 72 S C., 223. *Proof beyond reasonable doubt:* Green Ev., 159. *Proof of malice:* 15 S. C., 153. *Charging requests:* 67 S. C., 181. *Charge on facts:* Con., art. V, sec. 26; 47 S. C., 488; 61 S. C., 556; 76 S. C., 49. *Opprobrious words:* 75 S. C., 494; 82 S. C., 152. *Contradictory instructions:* 72 S. C., 194. *Recommendation to mercy:* Crim. Code, 109; 29 Am. St. R., 232. *Opinion evidence:* 36 S. C 479; 19 S. C., 66.

*Solicitor P. H. Stoll* and *Mr. L. D. Jennings,* contra. Oral argument.

The opinion in this case was filed March 30, but remittitur held up on petition for rehearing until

June 2, 1910. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. The defendant was found guilty of the murder of G. B. Mims and was sentenced to be hanged on July 30, 1909.

On Sunday morning, February 21, 1909, the deceased's horse, with buggy, got loose and ran off down the road. The defendant caught the horse between ten and eleven o'clock and drove it about over the country for several hours for his own pleasure, visiting and giving a ride to two girl friends. He made no inquiry as to who was owner. In the buggy was a satchel containing a pistol and a number of papers, chattel mortgages, etc. Defendant took the pistol from the satchel and put it in his pocket. Some of the papers were afterwards found on the road. Late that afternoon the deceased,

accompanied by A. J. McFadden, was searching for the horse and buggy and met defendant in possession, driving in the road accompanied by two girls. Deceased jumped out of the buggy he was in and with pistol in his hand stopped them, ordered the girls to get out, and ordering defendant to keep his seat, he got in the buggy with defendant.

McFadden testified that deceased then told him to turn around, and as he was turning he heard deceased say: Oh! and he looked and saw deceased falling backward from the buggy between the wheels, and saw defendant shoot at him as he was falling, that deceased's pistol fired while he was falling, that defendant jumped out of the buggy and fled, and McFadden fired at defendant as he ran off.

Defendant and the girls testified substantially that deceased, after ordering the girls out, looked in the back of the buggy and asked defendant if he took anything out, and defendant answered, no. That without further word the deceased ran around and fired at defendant, and that defendant fired back at deceased, and deceased fell away from the buggy. Defendant used the pistol of the deceased he had taken from the satchel. Defendant testified that the ball discharged from deceased's pistol struck the rim of his hat.

Deceased had two wounds upon his head, one in the forehead about one inch wide, made with a blunt instrument, cutting to the bone sufficient to stun or knock down, and the other pistol wound above the left eye penetrating the brain and causing death soon after the difficulty.

Appellant presents forty-two exceptions as grounds for reversal.

Exception 1. Error is alleged in forcing defendant to go to trial before the regular hour for the opening of the Court. This is without merit, as on the previous day the Court had announced an adjournment until nine o'clock. This is a matter under the control of the trial Court.

Exceptions 2 and 3. The motion to quash the indictment on the ground that it did not show on its face the name of the presiding Judge nor the names of the jurors by whom it was presented was properly overruled. The indictment shows that it was the presentment of the grand jury of the county.

Exceptions 4, 5, 6, 7. Defendant was arraigned on the ninth day of June and the day of trial set for Saturday, the twelfth day of June, the last day of the term. His counsel, on the call of the case for trial, objected to going to trial, and moved to continue on the ground that his arraignment was so delayed that it was impossible to give the required notice of a motion for change of venue.

The motion was properly overruled. The statute, February 22, 105, 22 Stat., 846, provides that four days' notice shall be given of application for change of venue, but further provides that the adverse party may waive the notice, and that the Circuit Court may shorten or extend the time for the hearing. In refusing the motion the Court declared that no intimation had been given of any wish to move to change the venue, or to continue the cause, until the morning appointed for trial, that he would have shortened the time of notice of motion to change venue if application had been made. Appellant was not denied any right under the statute as he made no attempt to assert any. It has been often ruled that refusal to continue overtime a cause is not reversible error.

Exception 8. When the juror, Murray, was examined on his *voir dire* and after the usual questions had been propounded and answered, counsel for prisoner requested of the Court permission to ask the juror: "Whether in spite of the fact that the defendant at the bar is a negro, he would be influenced thereby in passing on the evidence." The Court replied: "You can't go into that sea. It might swamp us all." The statute, sec. 2944, Civil Code, provides:

"The Court shall, on motion of either party in suit, examine on oath any person who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection. If it appears to the Court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause and another shall be called."

The Court having permitted the juror to be questioned as to his relationship to the parties, as to his interest in the cause, as to whether he had formed or expressed any opinion and as to whether he was sensible of any bias or prejudice therein, and being satisfied from the answers that the juror was not disqualified, there was no error in presenting the juror. "The presiding Judge must determine on the character of the questions proposed and when the examination shall cease." *State* v. *Coleman,* 8 S. C., 239; *State* v. *Coleman,* 20 S. C., 441; *State* v. *Hayes,* 69 S. C., 297, 48 S. E., 251.

Moreover, appellant having secured a jury without exhausting his peremptory challenges, is not in a position to claim that there was any error in presenting the juror. *State* v. *Anderson,* 26 S. C., 599, 2 S. E., 699; *State* v. *Hayes,* 69 S. C., 298, 48 S. E., 251.

Exception 9. When the State closed its testimony counsel for prisoner stated that he would like to have a little time to see some of the witnesses, to which the Court replied: "Suppose you see them at the recess. We are going to be pressed for time." This is excepted to as showing undue haste, inconsistent with a fair and impartial trial. As the case was being tried on the last day of the term, and counsel was fighting at every possible point, and .contesting every inch of ground, it is not surprising that the Court should not feel bound to suspend the hearing to enable

counsel to interview his witnesses, when the approaching recess would afford such an opportunity.

Exception 10. This exception complains that the Court refused to allow the witness, W. T. Lesesne, to be examined by defendant's counsel as to the character of the deceased as to treachery. The witness had testified that he knew nothing against the reputation of the deceased as being a dangerous, turbulent or violent man. Defendant's counsel said to the Court: "I understood your Honor to rule that I can't ask him as to treachery," to which, according to the record, the Court replied, "Yes, sir; you can't ask him." Counsel then proceeded to ask: "What was his reputation?" when the witness answered: "I will have to recite special instances to tell." The Court replied: "You have a right to testify to what you heard about the man's character." Then the Court permitted the witness to state in detail a difference between the witness and the deceased about a mule when the Court finally ruled that out as incompetent. The whole context shows that the Court did not exclude testimony as to the deceased's reputation for treachery. This is further shown by the fact that on the examination of Sheriff Gamble, defendant went fully in the matter.

Exception 11. This exception complains that the verdict was contrary to the weight of the evidence in that the bullet taken from the head of the deceased weighed one hundred and twelve and one-half grains, thirty seven grains less than a bullet taken in open Court from one of the cartridges in the pistol fired by the defendant, the contention being that this proved that the bullet which killed deceased must have been fired either from the pistol in deceased's own hand, or from the pistol in the hands of McFadden. The circumstance referred to is not at all conclusive and the inference is in conflict with the positive testimony and numerous other circumstances in the case. The exception raises no question of law.

Exception 12. The Court was correct in excluding from evidence a paper purporting to be a catalogue of the Winchester Repeating Arms Company, sought to be introduced to prove that there is a 32 calibre center fire pistol cartridge that weighs one hundred and fifteen grains, a little heavier than the bullet taken from the head of deceased. Such catalogue has no status in Court as original evidence.

Exceptions 13 to 30 inclusive allege error in refusing to charge defendant's eighteen requests. When the requests were presented the Court said: "Mr. Manning, I am going to take the liberty of trying to comprehend the substance of what you have stated in your requests in my general charge and not give every one of them," to which defendant's counsel responded: "Yes, sir." Then the Court proceeded to instruct the jury in his own language. The Court had the right to adopt this course, and no error can be imputed unless the appellant shows that some sound, material and applicable principle of law requested was not given in the general instruction. The exceptions under consideration do not point out wherein there was such omission to state the law.

Exception 32. This exception complains of a remark of the Court in the charge, "It is unlawful to kill," as excluding self-defense. As the language was almost immediately followed by the express charge, "If Bethune killed Mims in self-defense you should acquit him," it is apparent the jury were not misled into supposing that a killing in self-defense would be unlawful.

Exception 33. This exception alleges that the Court charged in respect to matters of fact in declaring: "What I am going to say to you is going to be said of the witnesses, and the facts proven in this case and not in hypothetical cases, but as to the testimony brought out in the case." This of itself constitutes no charge on the facts. If the Judge had carried out this intimation in his

charge there might have been ground for complaint, but it is not intimated in this exception wherein he stated as a fact any matter in issue or in any way conveyed to the jury his opinion with respect to the facts.

Exception 34. It is claimed that in charging: "If Bethune killed Mims in self-defense you should acquit him," that it was a charge on the facts as intimating as proven, a matter in issue, viz: whether Mims was killed by defendant or by McFadden. All the testimony tended to show that Mims was killed by defendant. The Court charged the jury: "The first issue for you is, did Bethune kill Mims? The State so charges it, and the State must prove it beyond a reasonable doubt, and I submit that issue squarely to you. If you have a reasonable doubt about that, the case ends right there and you write a verdict for the defendant."

Exception 35. The Court charged the jury: "I do not tell you here because it is not the law, that if Bethune wrongfully took away Mims' buggy, and Mims thereafter overtook him and set upon him unlawfully to beat him and kill him, the fact that Bethune wrongfully took away his buggy does not deprive him of the plea of self-defense." It is contended that this charge deprived defendant of the principle of law that the commission by a defendant of a wronful act, not the cause of the difficulty, does not deprive him of the plea of self-defense; and further, that using the words, "the fact that Bethune wrongfully took away his buggy," assumed as proven matter in issue.

We do not think appellant has any ground to complain of the charge, as it was in accord with appellant's contention. Nor does the charge assume that there was a wrongful taking of the buggy, but that matter is stated hypothetically.

Exception 36. This matter is controlled by what was said in considering exception 34.

Exception 37. The jury was instructed: "If the dead man Mims, assaulted—that is, struck at Bethune—because these

words that he used to him would not justify Bethune shooting or would not excuse Bethune—would not excuse the act, it would reduce the killing to manslaughter. Did Mims assault him, or did he strike him, and was Bethune put in sudden heat and passion thereby, and did Bethune in that state of mind draw his weapon and kill? If so, it is manslaughter." It is argued that the use of the language, "these words that he used to him would not justify Bethune shooting, or would not excuse Bethune," took from the jury the determination of the question whether the words were so opprobrious as to put the defendant in sudden heat and passion.

The rule is well settled that no words, however opprobrious, will constitute that legal provocation which is necessary to reduce a killing from murder to manslaughter. The rule stated in *State* v. *Rowell*, 75 S. C., 494, 56 S. E., 23, and *State* v. *Hunter*, 82 S. C., 152, as to opprobrious epithets, related to the law of self-defense and not to the law of manslaughter.

Exception 38. It is contended that the words in the charge above stated: "If the dead man, Mims, assaulted, that is, struck at Bethune, it would reduce the killing to manslaughter," excluded consideration of defendant's plea of self-defense. This exception cannot be sustained. The Court was charging with respect to the law of manslaughter. The law of self-defense was fully covered in other portions of the charge.

Exception 39. It is argued that the charge did not make it clear to the jury that the right of the deceased to retake his horse and buggy was conditioned on his doing so without a breach of the peace. This is a mistake. The Court expressly charged: "If a man loses his horse and buggy he has a right to retake it without warrant, but he must not commit a breach of the peace in doing it."

Exception 40. The Court, after leaving it to the jury to first say whether deceased made any attempt to arrest

defendant, charged the jury as to the right of one in resisting an unlawful arrest, in conformity to the law as declared in *State* v. *Davis,* 50 S. C., 426, 27 S. E., 905.

Exceptions 41 and 42. The Court charged the jury: "When shall the jury recommend a party to mercy? The Legislature gave the right, and the Legislature did not limit the power; they said wherever the jury sees proper under all the circumstances of the case, if they see any mercy in the circumstances; if the circumstances of the case satisfy the jury that the elements in the case reduce it from that bold and awful murder which merits death, then the jury may recommend the party to mercy."

It is contended that this placed a limitation on the power of the jury to recommend to mercy when the Legislature placed none, and that, further, it was a charge on the facts by calling the case murder.

It would have been better if the Court had simply called the jury's attention to the terms of the statute and left the matter with them without further remark. Still we do not think that the Legislature meant that the power to recommend to mercy should be exercised arbitrarily or capriciously, or without regard to the circumstances in the case. As we do not feel that the remarks of the Court were calculated to wrongly influence the discretion of the jury, we must overrule the exception.

There was no charge on the facts, as the matter of recommending to mercy presupposes a finding of murder.

After a careful review of all the exceptions, we find no reversible error.

The judgment of the Circuit Court is affirmed, and the case is remanded for the purpose of having a new day assigned for the execution of the sentence heretofore imposed upon the defendant.

MR. JUSTICE WOODS. *I concur, but if the defendant had exhausted his peremptory challenges, I should be inclined to sustain the eighth exception.*

June 2, 1910.  PER CURIAM.  Upon careful considera-
tion of the petition herein,

Ordered, That the petition be dismissed and the stay of
remittitur revoked without prejudice to appellant, when
called upon to say why a new day should not be
assigned for the execution of the sentence hereto-
fore imposed upon him, to plead that he is then
insane, and to have that plea determined in the proper
manner.