15476

STATE v. JONES

(23 S. E. (2d), 387)

404

*Mr. John C. Lanham, Mr. R. B. Paslay, Jr.,* and *Mr. Matthew Poliakoff,* all of Spartanburg, Counsel for the Appellant,

*Mr. Samuel R. Watt,* Solicitor, of Spartanburg, appeared for the State, Respondent.

December 4, 1942.

The opinion of the Court was delivered by CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE.

The defendant, Jesse Jones, a Negro youth about nineteen years of age, was indicted for the murder of one J. L. Hughes, a white man, who was found dead at his home in Spartanburg County, on or about February 24, 1942. Upon this indictment the defendant was tried at the April, 1942,

term of the Court of General Sessions for Spartanburg County before Hon. M. M. Mann, presiding Judge, and a jury. We quote the following from the "Statement" contained in the Transcript of Record:

"Attorneys were appointed by the presiding Judge on April 20, 1942, to represent the defendant, and they entered a plea of not guilty and also interposed a plea of insanity.

"On April 21, 1942, the defense attorneys made a motion to have the defendant sent to the State Hospital for a period of thirty days for a mental examination and observation, as provided under Section 6239 of the Code of Laws of South Carolina, 1932, and to continue the case until the next succeeding term of Court of General Sessions for Spartanburg County.

"The motion was refused, but an Order was passed by his Honor Judge Mann·to have two local physicians examine the defendant and to report their findings, and defendant was ordered to trial on April 23, 1942."

The trial resulted in a verdict of guilty returned on the same day; and thereupon the presiding Judge sentenced the defendant to die by electrocution on June 12, 1942. From the judgment and sentence of the Court this appeal is taken by the defendant upon nine exceptions which his counsel in their printed brief reduced to six main questions.

The first question relates to the motion of the appointed counsel for the defendant, three in number, for an order to have the defendant committed to the State Hospital for a period of thirty days for examination and observation, as provided in and by Section 6239, Code 1932; this motion having been overruled by the presiding Judge. The remarks of counsel thereon appear to have been set forth in full in the Transcript of Record, from which it will be seen that the attorneys for the defendant made an urgent and earnest plea that the motion be granted, stating in effect that from their investigation of the case, necessarily somewhat hur-

ried, it appeared that the only serious question they were in a position to raise was the mental condition of the defendant, and they felt that they needed the services of experts in mental diseases. They stated that they had communicated with a psychiatrist whose attendance, however, could not be had, and the name of a physician was mentioned by them with whom they had consulted, but apparently they were unable to procure his services, and they also said he "would not want to make only a cursory examination." They said further that the local physicians had advised them that they should have the opinion of a psychiatrist. The presiding Judge, after hearing arguments of counsel, including of course that of the solicitor, stated that the "local doctors deal in both physical and mental diseases," and his ruling was that it was the duty of the Court "not to postpone the trial any further." He did, however, sign an order to have the defendant examined by two local physicians, as appears from the excerpt above quoted.

Section 6239, which provides for commitment by a Circuit Judge to the State Hospital of a defendant for examination and observation as to mental capacity was before the Court in the case of *State v. Anderson,* 181 S. C., 527, 188 S. E., 186, 190, in which the carefully considered opinion was delivered by Mr. Justice Baker, from which we quote the following: "We are inclined to the opinion, after a careful study of the wording of section 6239, that it was not the intention of the Legislature to make it compulsory that one charged with a crime, who sets up the defense of insanity and irresponsibility, be committed to the hospital for observation, but that it is discretionary with the trial Judge. The statute says the judge 'is authorized to commit to the State hospital any person charged with the commission of any criminal offense who shall, upon the trial before him, be adjudged insane, or in whom there is a question as to the relation of mental disease to the alleged crime, whether such question is raised by the prosecution or de-

fense, or it appears to the judge from any evidence brought before him or upon his own recognition.' "

We adhere to the judgment thus expressed that the ▮▮ matter is one within the discretion of the trial Judge.

And in the case at bar there can be no doubt whatever that the just and learned presiding Judge desired to see that the rights of the defendant were fully protected in every respect, however heinous might be the charge against him. And we find from the record before us that he properly reached the conclusion that a mental examination of the defendant should be had, but he provided that such an examination be made by two reputable local physicians named by him. These doctors, however, did not profess to be experts in mental diseases, and were allowed a very brief time for their examination, while an examination at the State Hospital pursuant to the statute in question would have been made by specialists in mental disorders, and a sufficient time both for examination and continued observation, to wit, thirty days, would have been allowed.

It was suggested by the able and experienced solicitor in opposition to the motion that this question might be raised in the case of every homicide and hence there might be much resulting delay. But every case really stands on its own bottom, and the proper exercise of discretion depends upon the particular circumstances. We may say, however, that a motion of this kind by a defendant involves a "two-edged sword," for a finding in favor of sanity by the State Hospital authorities would inevitably tend to impair the defense of insanity interposed by such a defendant.

In view of the fact that the examination provided by the trial Judge was, as might well have been apprehended, distinctly inadequate we are constrained to hold that the refusal of the motion for a State Hospital examination was an erroneous exercise of the judicial discretion. This conclusion is strongly confirmed by the testimony of the two physicians who made the examination pursuant to the order of the

Court and who testified at the trial in behalf of the defendant. One of these was Dr. Oscar B. Wilson, a practicing physician of Spartanburg, who stated that he had joined in the examination of the defendant, but that to make a complete examination "usually requires about thirty · (30) days." Hence he testified in substance that since he had merely made one rather superficial examination he could express his opinion "only tentatively," and he repeated his assertion  We quote the following from his testimony:

"Q. From the observation you have been able to make, Doctor, what is your opinion? A. Of course, as I said, I can only make a tentative diagnosis from an immature and limited observation. I would say that my opinion at this time is that he is sane.

"Q. Do you think that opinion might be changed if a psychiatrist after a thorough observation and examination might come to a different conclusion? A. Yes; there is great possibility and even probability of change; general practitioners don't pretend to qualify as psychiatrists."

The other doctor was Dr. William T. Hendricks, another practicing physician of Spartanburg, who made the examination with Dr. Wilson. We quote the following from his testimony:

"Q. Tell the jury in your own words what your findings were and what your conclusions are? A. I found it impossible to come to any just and definite conclusion on that one examination. I think certainly he is of low mentality; but I can't help but feel that he knows right from wrong.

"Q. How long do physicians who specialize in mental diseases want or require to come to just and definite conclusions—much more than a superficial examination like that you have mentioned,· at any rate, do they not? A. Yes, sir; I should think so; after such observation and examination, I should think their conclusions would be much more reliable than at one cursory glance.

*    *    *

"Q. From your knowledge and hearing the case such as you have heard, it is your opinion that Jesse Jones does know right from wrong? A. I feel that way, on that short examination; but I·also feel that is too short an examination. I do not know enough about mental diseases to honestly express an opinion one way or another. Personally I feel that he knows right from wrong, in fairness all the way around. That is my personal opinion and not my professional opinion. My mind just changes from one way to the other."

It is manifest that each of these physicians was decidedly impressed with the fact he had not been able to make such an examination as would enable him to speak with reasonable certainty as to the soundness of his opinions, but that a more thorough examination by specialists should be made, with proper opportunity for somewhat continued observation.

Another question raised by the defendant's counsel on this appeal to the effect that the presiding Judge unduly limited the testimony of these physicians does not seem to us to require any discussion, for they appear to have been allowed to testify fully in the light of the well-settled law of this State as to mental capacity in criminal cases.

Upon the examination of the physician who testified as to the cause of the death of Mr. Hughes certain photographs were introduced by the State. Two of them showed parts of the premises where the homicide actually occurred and were clearly not subject to objection. Two others, however, were photographs of the body of the deceased showing his ghastly wounds. When one of the defendant's counsel objected to the introduction of these pictures he .stated positively: "The defendant admits the killing;" and further contended that the pictures were introduced for the purpose of inflaming the minds of the jurors and had no material bearing on the case. It is indeed quite. clear from reading the testimony of this doctor, who ex-

plained the location and nature of the fatal wounds, that the photographs had no probative value whatever, and really added nothing to the oral testimony, although their influence would naturally be prejudicial to the defendant. Our conclusion is that they were erroneously admitted in evidence under the facts and circumstances of this case.

In the case of *State v. Edwards,* 194 S. C., 410, 10 S. E. (2d), 587, 588, in which the leading opinion was delivered by Mr. Justice Fishburne, he expressed in one clear sentence the sound principle governing a matter of this kind, which we quote: "We agree that photographs which are calculated to arouse the sympathies or prejudices of the jury are properly excluded if they are entirely irrelevant or not substantially necessary to show material facts or conditions."

A majority of the Court there held, however, that the photographs offered by the State were properly admitted because relevant on the issue of identification.

In the quite recent case of *State v. Robinson,* 201 S. C., 230, 22 S. E. (2d), 587, 588, filed November 2, 1942, the Court, speaking by the Chief Justice, said: "The State, therefore, seems to have been in no position to know what defenses the defendant might be preparing to interpose or to rely upon, and while in our opinion it would have been better if the photographs had been withheld until and unless they became necessary for the purpose of refuting any possible subsequent testimony, it is nevertheless understandable that the Solicitor wished the record to contain evidence sufficient to establish the charge which the State had made."

Hence it was held that the admission of the photographs in that case was not error, and this discriminating statement by the Chief Justice distinguishes that case from the case at bar and further confirms the correctness of the principle announced in *State v. Edwards, supra.*

Counsel for the defendant also raise the point that ■ the trial Judge erred in allowing the clothing of the deceased to be introduced in evidence, the grounds of the objection being substantially the same as those interposed to the introduction of photographs of the deceased; but our conclusion from a review of the testimony is that because of the rather peculiar circumstances therein detailed the condition and location of the clothes of the deceased would tend to throw some light upon the issues, and therefore such clothing was properly allowed in evidence by the presiding Judge.

The other questions before us on this appeal relate to the charge of the presiding Judge, and the first one for consideration involves that part of the charge referring to the power of the jury to recommend mercy, and we copy the following which contains all that was said on the subject except with reference to the form of verdict: "There is a provision in the Constitution of this State which says that even though the State has proved a case of guilty of murder, the jury is invested with the right to extend mercy, in which case the verdict would be guilty with recommendation to the mercy of the Court, that is a verdict which automatically reduces the sentence or penalty to life imprisonment. The recommendation to mercy does not have to be accounted for by the jury. The jury does not have to assign a reason. Our Constitution gives to the jury the right to say that the one, even though he has been found by them to be guilty of feloniously and maliciously taking the life of another, and whom they can send to the electric chair. Now, as I say, it is an act of mercy that the jury extends to the accused the right to recommend to the mercy of the Court. *It is not intended by the Constitution to furnish a juror who knows or is convinced in his conscience that the accused should be electrocuted and who is seeking a way out of doing his duty, a subterfuge, nor is it intended to furnish a camouflage behind which a juror may dodge a duty imposed upon*

*him by law. It is a statute of grace, and not necessarily a dodging of duty, for the jury to recommend to the mercy of the Court. In one case it would be a proper verdict; in another case it would not be proper under a juror's oath."* (Emphasis added.)

From the italicized portion of the foregoing quoted excerpt it will be seen that Judge Mann used the words "subterfuge," "camouflage," "dodging of duty," and "a juror's oath." These are indeed strong words and phrases, and the inevitable inference to be drawn from them in their context is that if the evidence was not sufficient to warrant the jury in extending mercy a recommendation by them to that effect might be a *subterfuge* or a *camouflage,* an evasion or attempt to conceal a failure on their part to perform their duty, and would thus be a *"dodging of duty"* and a violation of *"a juror's oath."* It seems to us that this is clearly in contravention of the established rule of law, as tending to instruct the jury on a matter wholly within their discretion, and that the other expressions in the charge on this subject are not sufficient to relieve it from the prejudicial effect of the particular language complained of.

The trial Judge inadvertently referred to the Constitution as providing that a recommendation to mercy would reduce the sentence to life imprisonment, but obviously he intended reference to the statutes, and we do not regard this as material.

In the case of *State v. King,* 158 S. C., 251, 155 S. E., 409, 425, this Court had this particular matter under serious consideration and reached the conclusion lucidly expressed in the opinion delivered by Mr. Justice Blease, from which we quote the following: "The act mentioned [Section 1102, Code 1932] gave to a petit jury the right, when it found a defendant guilty of murder to recommend him to the mercy of the court, and this recommendation has the effect of reducing the punishment

from death to that of imprisonment in the penitentiary, with hard labor, for the lifetime of the prisoner, found guilty. The statute is very broad. It is clear that under its terms a jury may, for any reason whatever appearing to them, refuse to have the accused put to death, but may spare his life. *The proper charge to be given as to this statute is for the presiding judge to simply inform the jury that under its provisions they may recommend the defendant to the mercy of the court, and that the effect of such recommendation will be to save the accused from death, and cause him to be sentenced for lifetime imprisonment at hard labor.* The presiding judge was in error in stating to the jury repeatedly that they had nothing to do with mercy, and he committed further error in then telling the jury some of the instances in which they should recommend mercy." (Emphasis added.)

The portion of the foregoing excerpt which we have italicized is, we believe, a clear, succinct and correct statement of the rule prescribed by this Court and to be followed by trial Judges in murder cases; but the same, doubtless through inadvertence, was not observed by the Court below in the instant case.

The doctrine so laid down in the case of *State v. King, supra,* was expressly reaffirmed in the opinion in another case delivered at the same time, to wit, *State v. Blakely,* 158 S. C., 304, 155 S. E., 408.

Upon an examination of cases from other states, we find that the matter under discussion has resulted in some division among the authorities, due in part to statutory differences, and the cases are cited in annotations in 17 A. L. R., 1117 and 87 A. L. R., 1362. In the latter annotation, at page 1366, we find the following correct analysis of the holding of our own Court in the *King* and *Blakely cases, supra:* "The view that where the statute makes a recommendation binding on the Court, the question whether the defendant shall be recommended to the

clemency of the Court is entirely within the discretion of the jury, and that any instruction, charge, or suggestion as to the cause for which the jury can or ought to recommend mercy is erroneous, and is ground for a reversal of a conviction where no recommendation is made, finds support in" these two South Carolina cases.

The principle thus announced seems to be in accordance with the weight of authority, finding ample support in many cases from other jurisdictions, as will be seen by reference to page 1129 of the note in 17 A. L. R., already mentioned. One of the cases in which the reasons for the rule are excellently set forth is the New Jersey case of *State v. Martin,* 92 N. J. L., 436, 106 A., 385, 17 A. L. R., 1090.

However, it appears (rather surprisingly) that two South Carolina cases are cited in the note referred to in 17 A. L. R., to wit, at page 1136, as supporting the rule obtaining in some jurisdictions that the discretion of the jury as to recommendation of mercy "should be exercised only where the evidence discloses mitigating circumstances which warrant the recommendation." Our cases thus cited, along with those from some other states, are *State v. Bethune,* 86 S. C., 143, 67 S. E., 466, and *State v. Bates,* 87 S. C., 431, 69 S. E., 1075.

In the *Bethune case* the Court held that the charge of the presiding Judge to the effect that the jury might recommend mercy if the circumstances satisfied them that the elements in the case "reduce it from that bold and awful murder which merits death," [86 S. C., 143, 67 S. E., 470] was not erroneous; and the Court says: "It would have been better if the court had simply called the jury's attention to the terms of the statute, and left the matter with them without further remark. Still we do not think that the Legislature meant that the power to recommend to mercy should be exercised arbitrarily or capriciously or without regard to some circumstances in the case. As we do not feel that the remarks of the court were

calculated to wrongly influence the discretion of the jury, we must overrule the exception."

In the *Bates case* the Court held that an instruction urging the jury to thoroughly consider the facts and circumstances before recommending to mercy was not error, and we quote the following from the opinion: "The charge was a mere warning for thorough consideration of the facts and circumstances by the jury before recommending the defendant to the mercy of the court, and we fail to see wherein it was prejudicial to the rights of the appellant."

We need not stop to consider whether these cases ■ might be distinguished from the case at bar, but in order that there may be no misunderstanding we desire to say that in so far as the *Bethune* and *Bates cases* may be construed to limit or qualify the rule later laid down as above quoted they were in effect superseded and overruled by the decisions of this Court in the cases of *State v. King, supra,* and *State v. Blakely, supra.* We believe it was manifestly the wise intent of the statute that the full responsibility for recommendation to mercy in murder cases and thus reducing the sentence from death to life imprisonment was placed upon the jury rather than upon the presiding Judge, and their discretion in the matter is an unlimited one.

The jury were instructed by the presiding Judge ■ that if they should find that the defense of insanity had been established by the greater weight or preponderance of evidence the verdict should be "guilty, but insane." Counsel for the defendant excepted to the charge on this point alleging that in such case the verdict should be "not guilty, by reason of insanity." While we agree with counsel that the form of verdict suggested in their exception would be preferable, we do not think the trial Court committed error of law in his charge in this respect, as the form stated by him is really the same in effect.

The exceptions relating to commitment of the defendant to the State Hospital for examination and observation, to the introduction of the photographs of the body of the deceased, and to the charge as to recommendation to mercy, are sustained; and the other exceptions are overruled.

The judgment of the Circuit Court is therefore reversed and the case remanded for a new trial, *provided,* that in the meantime the defendant be committed to the State Hospital for observation and examination, pursuant to Section 6239 of the Code, upon the order of any Circuit Judge having jurisdiction.

Reversed and remanded.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES concur.