**UNITED STATES ex rel. WILSON
v. RYAN.**

United States District Court
S. D. New York.

Dec. 29, 1950.

Unger, Freedman & Fleischer and Elrich A. Eastman, all of New York City, for petitioner.

George B. De Luca, District Attorney, Bronx County, New York, New York City, for respondent.

McGOHEY, District Judge.

This is a petition for a writ of habeas corpus. The petitioner is now in the custody of the Warden of the City Prison, Bronx, New York, by virtue of a rendition warrant issued by the Acting Governor of New York. This was issued on demand of the Governor of South Carolina, from which state the petitioner had escaped while serving a life sentence for murder. He asserts that he was denied due process at the time of his conviction, thus rendering illegal all subsequent proceedings, including the rendition warrant of New York's Executive under which he is now held in custody. He further asserts that while in custody in South Carolina he was, and if returned there will again be, subjected to cruel and inhuman punishment.

After his arrest in New York he sought release by habeas corpus in the New York Supreme Court on the identical grounds urged here. The writ was dismissed after a hearing. The Appellate Division, First Department, 276 App.Div. 891, 94 N.Y.S.2d 195, unanimously affirmed without opinion. Judge Fuld of the Court of Appeals denied a stay pending application for leave to appeal to that court. Justice Jackson denied a stay pending application for leave to appeal to the New York Court of Appeals and application for certiorari to the United States Supreme Court. The petition to this court followed. Full argument was heard, but no hearing was held because petitioner's counsel, who had represented him in the state court, advised this court at the end of his argument that the petitioner would rest on the record on appeal from the state court's decision. This record was made part of the return to the writ. It consists of 153 printed pages.[1] In answer to this court's question, counsel for petitioner represented that no different or additional evidence would be offered at a hearing here than had already been offered in the state court.

From the record and petition the following appears. Wilson admits that on September 4, 1941, in South Carolina, he shot one Paul Rivers, who died as a result three days later. He was arrested on September 5. On September 8, the day after Rivers died, Wilson was arraigned. Of the arraignment he says "I couldn't say nothing at the hearing and I didn't have no lawyer to say nothing." [2] Thereafter, on the "First

1. This is hereafter referred to as "Record."

2. R. p. 34 fol. 101.

Monday of November", 1941, he was indicted together with one Willie Smith[3] by the Grand Jury of Sumter County, for the murder of Rivers. The indictment was called for trial on November 4. At the New York hearing Wilson said there was "no jury on my case. * * * They had a jury on Willie Smith case."[4] This is not in accord with the certified transcript from South Carolina.[5] That shows that there was a jury in Wilson's case and that the jury recommended mercy. This recommendation required the court to reduce the punishment from death to life imprisonment.[6] After being sentenced, he testified against Willie Smith who was acquitted by direction of the court.[7]

It is not possible to tell from the South Carolina transcript whether in fact Wilson had counsel or not. It appears to be a printed form with no place to insert names of counsel if any did appear. Wilson now claims he had none. He has not claimed, however, that he was refused counsel or that he was not adequately advised of his right to have counsel if he desired. Judge McGeehan in the New York Supreme Court did not make a specific finding on this point, but it is undoubtedly included in his general finding that Wilson "failed to establish an adequate and sufficient basis to grant the relief sought from this court in New York State."[8] Judge McGeehan clearly did not believe Wilson's account of the treatment he received while a prisoner, and may very well have disbelieved him on the matter of counsel as well. Indeed, this claim of denial of due process was made for the first time on the day the hearings commenced before Judge McGeehan. This was more than five months after the issuance of the state writ. This circumstance is not without significance. The original New York petition pleaded only the alleged

cruel and inhuman treatment. The delay of five months was occasioned wholly by petitioner's requests for adjournments, which were granted, to enable him to secure other witnesses or other evidence to prove that he had been, and if returned would again be, subjected to cruel and inhuman punishment. Indeed, at the start of the hearing his counsel told the court that even after five months he was still lacking the additional evidence, and he requested more time which was denied. Thereupon he moved, and was permitted, to amend the petition by adding the claim of denial of due process. Throughout the hearing, however, counsel stressed only the claim of cruelty. Indeed, he said at the outset: "Judge * * * but you do know that the basis on which we are bringing this petition here is the cruelty."[9] Here, also, the whole thrust of the argument was the alleged cruelty. Judge McGeehan, on this point, made this finding: "It is undisputed that the Relator was a Trusty while he was incarcerated under the final judgment in the demanding State, and that he, at times enjoyed privileges far beyond those extended to the prisoners incarcerated in the State of New York and the Court finds that it was while enjoying such unusual privileges that he escaped from custody and came to New York."[10]

Justice McGeehan has had a long and distinguished career on the New York Supreme Court. He accorded this petitioner a full and fair hearing. Indeed, no contrary claim is made. There is no basis whatever to justify different findings by this court on the record made before Justice McGeehan.[11] This case is clearly distinguishable from United States ex rel. Turpin v. Snyder[12] which is pressed by counsel. In that case, no court had passed on the claimed denial of due process, and under the cir-

3. R. pp. 151–154.

4. R. p. 35 fol. 103–4. He said that during an altercation with Rivers, Willie Smith had put "his gun in my hand." R. p. 33 fol. 98 and p. 36 fol. 107.

5. R. p. 155 fol. 464–5.

6. South Carolina Criminal Code 1942, § 1102.

7. R. p. 156 fol. 466.

8. R. p. 157 fol. 470.

9. R. p. 21 fol. 61.

10. R. p. 157 fol. 470.

11. United States ex rel. Jackson v. Ruthazer, 2 Cir., 181 F.2d 588.

12. 2 Cir., 183 F.2d 742.

cumstances there present the district court here was the only tribunal in which it could be passed on. This petitioner is not so circumscribed. There are open to him the courts of South Carolina and the United States Courts in that state. The question of due process may be explored more fully in either of those forums. Their process can reach all the local witnesses and records bearing on the question. The argument urged upon this court, that this petitioner cannot expect adequate relief from South Carolina's courts, is sufficiently answered by the decision of that state's Supreme Court in State v. Jones, 1942,[13] and the cases cited therein.

The writ is dismissed.