James E. BUSH, Petitioner,

v.

Wayne McCOLLUM, Sheriff of Ellis County, Texas, Respondent.

Civ. A. No. 3-63-451.

United States District Court
N. D. Texas,
Dallas Division.

May 27, 1964.

Billy J. Moore, Ennis, Tex., and Charles Alan Wright, Austin, Tex., for petitioner.

Sam R. Wilson, Asst. Atty. Gen. of Texas, Houston, Tex., and Bruce Allen, Dist. Atty., Ellis County, Waxahachie, Tex., for respondent.

HUGHES, District Judge.

In this case James E. Bush filed a petition for the issuance of a writ of habeas corpus in the United States District Court for the Northern District of Texas asking for his release from the custody of Wayne McCollum, Sheriff of Ellis County, Texas.

The legal question involved is whether the Fourteenth Amendment requires, in a criminal prosecution of an indigent defendant previously adjudicated insane, that the Court commit him to a mental hospital for examination or provide funds for employment of a psychiatrist or otherwise make available to the jury and to court appointed counsel for the defendant, evidence as to defendant's sanity.

The facts in the case were stipulated. Petitioner, James E. Bush, is a citizen of the United States and a resident of Ellis County, Texas. The respondent, Wayne McCollum, is the Sheriff of Ellis County, Texas.

Petitioner was arrested October 22, 1960 for a crime allegedly committed the previous day. He was indicted for felony theft on February 7, 1961, and on April 2, 1961 the Court appointed an attorney to represent him.

At the time of the alleged offense, petitioner was sixty-four years old and was indigent. Prior thereto on February 14, 1924 petitioner had been found of unsound mind by a jury and that judgment had never been vacated.

On April 21, 1961 the attorney for defendant, the present petitioner, filed two motions. The first requested the Court to send the defendant to a mental institution for diagnosis before being tried and the other requested the Court to appoint and pay for a competent psychiatrist's services to diagnose the defendant's mental condition. It was alleged in both motions that without an evaluation of his mental condition, he would be unable to adequately prepare his defense. Both motions were denied.

On the trial of the insanity issue the County Health Officer, a general practitioner without special training in mental illness, testified for the State that in his opinion the defendant was of sound mind. The examination of the County Health Officer was limited to questioning the defendant with reference to his name, birthplace, age, date of birth, name of the President of the United States, the Governor of Texas, past medical history, hallucinations, and simple mathematical questions.

A psychologist called by the defendant testified on the insanity trial that in a brief examination of the defendant that day, he was unable to determine whether the defendant was sane or insane. He testified further that the adequacy of any psychological examination would depend on the training of the examiner and the sufficiency of the examination, and that an adequate examination would require two to three hours, which would include talking to the person and giving him psychological tests. In his opinion an examination such as that given by the County Health Officer did not give an adequate indication of the person's mental state, other things being necessary to consider. No other evidence bearing

on the defendant's sanity at the time of the alleged crime or at the time of the trial was made available by the State to defendant or his counsel and no other medical testimony was introduced.

The Texas Court of Criminal Appeals affirmed petitioner's conviction on January 3, 1962, 172 Tex.Cr.R. 54, 353 S.W.2d 855, and on February 14, 1962 denied rehearing, specifically rejecting petitioner's claim that the Fourteenth Amendment to the Constitution of the United States gave him the right to some form of psychiatric assistance.

On October 15, 1962 the Supreme Court of the United States granted certiorari to review petitioner's conviction, 371 U.S. 859, 83 S.Ct. 123, 9 L.Ed.2d 98. On February 23, 1963 the State of Texas filed a supplemental brief in the United States Supreme Court in which it put before the Court a report of Dr. Adolf Hug, a psychiatrist chosen by the State to examine petitioner. Dr. Hug's report stated that petitioner suffered from simple schizophrenia and that he "was only partly or not at all responsible for his acts, for very many years."

At the oral argument before the United States Supreme Court the Assistant Attorney General of the State of Texas stated that if the case was sent back to the Court of Criminal Appeals his personal position, speaking as Assistant Attorney General of Texas, was that Bush should be granted a new trial. On March 25, 1963 the United States Supreme Court vacated the judgment of the Texas Court of Criminal Appeals and remanded the case "for consideration in light of subsequent developments." The Court did not pass on the question of denial of due process declaring, "Appropriate federal-state relations and proper regard for state processes require that Texas' highest criminal court be afforded the opportunity to pass upon the case with these later developments before it." Bush v. Texas, 372 U.S. 586, 83 S.Ct. 922, 9 L.Ed.2d 958.

The mandate of the Supreme Court of the United States issued on April 19, 1963 and was received by the Texas Court of Criminal Appeals on April 23, 1963. On April 24, 1963 the Texas Court of Criminal Appeals entered an order in which it took note of the action of the Supreme Court and further outlined the statutory manner whereby defendant's sanity may be judicially determined while an appeal is pending in the Texas Court of Criminal Appeals. The Court in its order stated that "final disposition of this appeal would await filing of further motions, briefs and certification as to 'subsequent developments' referred to in the Supreme Court's opinion." Bush v. The State of Texas, Tex.Cr.App., 372 S.W.2d 683.

On July 22, 1963 a trial was held in the District Court of Ellis County on the issue of defendant's sanity at the time of the hearing and also on the date respectively of the alleged offense and of the main trial. The trial was purportedly held under the provisions of Sec. 3, Art. 932b, Vernon's Ann.C.C.P. Defendant made various motions to postpone, to protest the sanity hearing, to grant a new trial and for various findings by the Court. All were denied.

The record on the sanity hearing reflected that defendant was transferred to the Rusk State Hospital on February 21, 1963, and received psychiatric treatment for a period of 89 days. On the July 22, 1963 sanity hearing two psychiatrists and a general practitioner who had examined defendant, testified for the State that in their opinion defendant was sane. Defendant's counsel did not cross examine and did not adduce any testimony. The jury found defendant sane on October 21, 1960, on April 25, 1961 and on July 22, 1963, the dates of the alleged criminal act, the trial and conviction, and the sanity hearing, respectively.

On November 27, 1963 the Court of Criminal Appeals affirmed the judgment of the trial Court.

On March 2, 1964 petitioner filed his petition in this court asking for the issuance of a writ of habeas corpus to discharge him from the custody of the Sheriff of Ellis County unless he be given

a new trial on the offense for which he was convicted and held in custody.

■ Since petitioner has exhausted his remedies in the state court and since a federal constitutional question is involved, petitioner may seek federal redress pursuant to Section 2241 et seq., Title 28 U.S.C.A.

■ The petitioner, Bush, having been found of unsound mind in 1924 and that judgment not having been set aside, the State had the burden of proving his sanity beyond a reasonable doubt at the time of the commission of the offense. Herring v. State, 141 Tex.Cr.R. 281, 148 S.W.2d 416.

To discharge its burden, the State relied at the insanity hearing prior to the trial and at the trial on the merits on the testimony of three lay witnesses and of the county medical officer.

■■ While the testimony of lay witnesses was admissible, such was not a sufficient basis for a finding that Bush was of sound mind. Article 1, Section 15–a of the Texas Constitution, Vernon's Ann.St., provides that "No person shall be committed as a person of unsound mind except on competent medical or psychiatric testimony." While this provision of the Constitution relates to civil actions, there is even more reason to hold lay evidence insufficient in a criminal case to send a man to the penitentiary for life. Wright v. United States, 102 U.S.App.D.C. 36, 250 F.2d 4; Fielding v. United States, 102 U.S.App.D.C. 167, 251 F.2d 878; Douglas v. United States, 99 U.S.App.D.C. 232, 239 F.2d 52. In each of these cases the Court held testimony by government lay witnesses was not sufficient to uphold a jury conviction in the face of evidence of insanity from psychiatrists.

■ The testimony of the County Medical Officer was likewise insufficient. Dr. Compton was a general practitioner. He testified that his training included psychiatry, but that he had had no specialized training in that branch of medicine. In his practice he stated that he treated patients with a mild emotional problem, but that those with more difficult problems he referred to a specialist.

A doctor, with such training and experience, is not factually competent to give an opinion as to sanity. While this view has not always been recognized by the courts, recent cases reflect a changing attitude. Krupnick v. United States, 8 Cir., 264 F.2d 213.

In the Krupnick case the petitioner sought to have his sentence vacated under 28 U.S.C.A. § 2255, claiming that he was mentally incapable at the time of his conviction and that the court had improperly refused to have an examination and report made of his condition by a qualified psychiatrist. In holding with the petitioner, the Eighth Circuit Court of Appeals said that 18 U.S.C.A. § 4244, which provides for the appointment of "at least one qualified psychiatrist" on motion of the accused, "does not authorize the court to substitute an examination and report of a general physician for that of a psychiatrist."

In a South Carolina case, State v. Jones, 201 S.C. 403, 23 S.E.2d 387, the trial Court refused to commit the defendant to the State Hospital for examination by specialists, and instead, named two reputable local physicians to make the examination. The South Carolina Supreme Court said that such an examination was "as might well have been apprehended, distinctly inadequate", and that the trial Court's action was reversible error.

■ Even if the County Medical Officer was qualified to diagnose mental responsibility, the examinations he made of petitioner were too cursory to permit such a diagnosis, his examination being limited to simple questions without the use of any kind of psychological tests.

The requisites of an adequate mental examination were stated in the case of Williams v. United States, 102 U.S.App. D.C. 51, 250 F.2d 19, by the United States Court of Appeals for the District of Columbia as follows:

"The facts required by way of psychiatric testimony are a 'description

and explanation of the origin, development, and manifestation of the alleged disease * * * how it occurred, developed, and affected the mental and emotional processes of the defendant * * *.' Carter v. United States, 102 U.S.App.D.C. 227, 252 F.2d 608, 617. The examinations conducted by the psychiatrists must be of a character they deem sufficient for the purpose of determining the facts required. If brief jail interviews with the defendant are inadequate for the purpose, the defendant should be committed to a mental hospital where he can be examined under clinical conditions and for a long enough time to satisfy the psychiatrists."

The two short interviews by the County Medical Officer were mere consultations and testimony based on them was not sufficient to permit the jury to form a meaningful judgment as to whether Bush was sane, nor did it overcome the presumption of insanity.

█ Denial of motions of Bush's counsel prior to trial to commit him to a mental hospital for examination or provide funds for employment of a qualified psychiatrist or otherwise make available to the jury and to court appointed counsel psychiatric evidence as to Bush's sanity deprived him of the only satisfactory procedure for determining sanity.

By overruling Bush's motions and failing to provide him an opportunity to prepare his defense, the State denied him a fair trial as required by the Fourteenth Amendment.

The case relied on by both petitioner and respondent is United States ex rel. Smith v. Baldi, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549. This was an application for writ of habeas corpus in which petitioner, Smith, who had received the death penalty on a plea of guilty of murder, contended that he was deprived of a fair trial because he was denied the technical assistance of a psychiatrist.

While the Supreme Court stated in that regard "We cannot say that the State has that duty by Constitutional mandate", the circumstances were quite different from the instant case. In the Smith case a psychiatrist who had examined petitioner at the Court's request, and two other psychiatrists called by the defense, testified as to petitioner's mental competence. In addition, counsel for petitioner introduced various reports and letters dealing with his client's mental history.

Even though the majority decided that petitioner in the Smith case had not been denied due process of law, it is believed the majority would have agreed with the following statement at page 571, 73 S.Ct. at page 396 in the dissenting opinion:

"A denial of adequate opportunity to sustain the plea of insanity is a denial of the safeguard of due process in its historical procedural sense which is within the incontrovertible scope of the Due Process Clause of the Fourteenth Amendment."

The very evidence which the Court in the Smith case held sufficient was denied petitioner in the instant case. He was found to be sane, contrary to the prior adjudication of insanity, solely on the basis of the opinions of lay witnesses and of a doctor with no specialized training in mental ills.

The view that the Supreme Court would have held that Smith had been denied due process of law under circumstances similar to that in the instant case is strengthened by the Supreme Court's reliance on the decision of the First Circuit in McGarty v. O'Brien, 188 F.2d 151. The petitioner for habeas corpus in the McGarty case had been convicted of a crime in Massachusetts. Prior to trial he had been examined by two psychiatrists, pursuant to the Briggs Law of that state. Under such circumstances the Court denied the writ, declaring at page 157:

"[E]xamination and report by two competent and impartial experts supplied at state expense is enough, we think, to satisfy the state's consti-

tutional obligation under the due process clause."

■ The Smith and McGarty cases strongly indicate that in a case where insanity is seriously in issue, the State must make available testimony by competent psychiatrists in order to satisfy the requirements of the Fourteenth Amendment.

■ It is now settled law that in certain cases an accused is entitled to court appointed counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. But the right to counsel is meaningless if the lawyer is unable to make an effective defense because he has no funds to provide the specialized testimony which the case requires. In the case of Powell v. Alabama, 287 U.S. 45, at page 71, 53 S.Ct. 55, at page 65, 77 L.Ed. 158, the Court stated that the duty to appoint counsel

"is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case."

In order for Bush in the instant case to have the effective aid of counsel, it was necessary for his counsel to have the assistance of a qualified psychiatrist and a trial, without expert evidence as to sanity, which found him sane and resulted in a life sentence is so lacking in fairness as to be a denial of liberty without due process of law, contrary to the Fourteenth Amendment.

■ It is the contention of respondent in this case that even if the Court was incorrect in failing to appoint a psychiatrist to examine petitioner prior to the trial on the merits, ample psychiatric examination had thereafter been provided, and in the trial of July 22, 1963 petitioner had been found sane on the date of the alleged offense and at the time of the original trial, as well as at the time of his sanity hearing on July 22, 1963.

The July 22, 1963 trial was under the provisions of Article 932b, Sec. 3, V.A.C.C.P. This statute provides for a hearing only after conviction and its purpose is to abate imposition of sentence on a defendant who becomes insane subsequent to conviction for an offense. It can only determine the sanity of the defendant at the time of the hearing, and a judgment of insanity under the provisions of this statute can only provide for confinement in a state hospital "as a person charged with a criminal offense until he becomes sane."

This is apparent from the provisions of the statute, and the Court of Criminal Appeals has specifically so stated in the case of Bush v. State, 372 S.W.2d 683. In its opinion at page 684 the Court said:

"the provisions of Sec. 3, Art. 932b, Vernon's Ann.C.C.P., only provides a method for judicially determining an appellant's sanity while an appeal from his conviction is pending, or if the question of sanity of the defendant is raised after his conviction and prior to the pronouncement of sentence, and does not provide for a judicial determination of sanity or insanity at the time of the commission of the offense charged."

On the other hand a finding of insanity at the time of the alleged offense would have acquitted Bush even though he were then committed to a state hospital. Sec. 3, Art. 932b does not provide for a trial on the sanity issue at the time of the alleged offense or at the time of the trial of the offense, and its attempted use to determine such issues did not cure but further denied Bush substantive and procedural due process as required by the Fourteenth Amendment.

Since Bush's trial did not fulfill the requirements of due process of law, petitioner is now unjustly and unlawfully imprisoned and restrained of his liberty and detained under color of the authority of the State of Texas in the custody of respondent.

Petitioner's application for writ of Habeas Corpus will be granted unless he is retried in the State Court within a reasonable time and unless for the retrial he is provided at State expense adequate psychiatric assistance.

**ACME MARKETS, INC., a body corporate,**

v.

**RETAIL STORE EMPLOYEES UNION LOCAL NO. 692, AFL–CIO.**

Civ. No. 15653.

United States District Court
D. Maryland.

July 21, 1964.

Robert L. Sullivan, Jr., Barry I. Robinson, Sklar & Sullivan, Baltimore, Md. (Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., of counsel), for plaintiff.

S. G. Lippman, Ira Lechner, Tim L. Bornstein, Washington, D. C., and Melvin Steinberg, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Plaintiff seeks remand to the Circuit Court of Baltimore City of this suit in equity for an injunction which defendant removed therefrom.

The bill of complaint filed in the State Court on June 22, 1964, alleges that plaintiff, a Delaware corporation, is engaged in the retail sale of food and groceries in many locations in Baltimore City and elsewhere in the State of Maryland; that in April 1964, in support of an economic strike, defendant[1] began to picket plaintiff's stores, which were thereupon closed; that on June 17 plaintiff decided to reopen its stores and on June 19 solicited applications for employment; that on six occasions between June 19 and June 22 defendant committed specified acts of violence against such applicants in Baltimore City; that defendant engaged in mass picketing, as a result of which it was "becoming increasingly difficult to maintain public order in and about plaintiff's stores and places of business"; that the alleged illegal acts of defendant "are so enmeshed with the picketing as to make them inseparable"; that irreparable injury had been and would be sustained by plaintiff, and "a large number of persons" would be intimidated, threatened and coerced, unless the unlawful actions of defendant were restrained.

The bill of complaint prayed for: (1) an order temporarily and permanently restraining defendant from picketing at plaintiff's stores and places of business; (2) an order restraining defendant from placing or allowing more than four pickets in and about any store; (3) an order restraining defendant from "coercing

---

1. The term "defendant" will be used herein to include defendant and its agents, members and representatives, unless the context indicates otherwise.

intimidating, threatening, warning, assaulting, battering or in any way interfering with any persons in and about [plaintiff's] stores or places of business"; and (4) other and further relief.

On the allegations of the bill, supported by an affidavit made on information and belief, the State Court issued a temporary restraining order, prohibiting all picketing of plaintiff's stores and places of business by defendant and restraining defendant from coercing, intimidating, threatening, warning, assaulting, battering or in any way interfering with any person in and about plaintiff's stores or places of business.

On the following day, June 23, defendant sought unsuccessfully to secure a modification of the order. On June 24 defendant entered an appeal to the Court of Appeals of Maryland, which, on plaintiff's motion, was dismissed by that Court the same day. During the hearing on plaintiff's prayer for a preliminary injunction, which was begun the same day, defendant filed a petition to remove the case to this Court. Immediately upon receiving notice thereof the State Court stopped its hearing. Late that afternoon, following a hearing before two judges of this District Court, this Court announced that pending decision of a motion to remand, which plaintiff's attorneys said they intended to file, this Court would enforce the State Court order, modified (1) to limit the injunction to acts which, in Youngdahl v. Rainfair, Inc., 355 U.S.

131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957), the Supreme Court held to have been properly enjoined, and (2) to limit the number of pickets at each store and at each entrance. An order to that effect was signed that evening, and has been continued in effect by agreement of the parties. The Court is advised that the order, so modified, has been observed.

On July 1, plaintiff filed its motion for remand. Argument thereon has been heard on several occasions, since counsel for defendant raised new points from time to time and requested leave to file additional briefs.

"§ 1441. Actions removable generally

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending;