William G. BRINKS, Petitioner-Appellant,

v.

STATE OF ALABAMA and W. S. Furlow, Warden, Respondents-Appellees.

No. 71–2352.

United States Court of Appeals, Fifth Circuit.

March 1, 1972.

Rehearing and Rehearing En Banc Denied Sept. 26, 1972.

Frank B. McRight, Mobile, Ala. (Court appointed), for petitioner-appellant.

William J. Baxley, Atty. Gen., Joseph G. L. Marston, III, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

MORGAN, Circuit Judge:

William G. Brinks, an indigent state prisoner, brought this habeas petition in federal court claiming the State of Alabama violated his constitutional rights by refusing to grant him a sanity investigation prior to his trial. The district court denied the petition. We reverse and remand.

Petitioner was convicted of robbery in the Circuit Court of Mobile County, Alabama, on October 26, 1966. He was sentenced to ten years in the state's penal system where he is presently confined. Prior to his trial petitioner entered a plea of not guilty and not guilty by reason of insanity. Brinks' appointed attorney then filed a motion for a pre-trial investigation of his client's sanity and requested that the court "call a responsible physician and other qualified witnesses" to determine whether Brinks was insane.[1]

---

1. Although not specifically stated in this motion, we assume Brinks was claiming insanity both at the time of the crime and at the time of his trial since most of the evidence of insanity related to Brinks' behavior several years before the offense was committed.

In order to rule on this motion the court held a hearing at which both sides were afforded an opportunity to present evidence concerning Brinks' mental condition. The state offered no evidence, but Brinks introduced one letter from his mother and three letters from former school teachers. Mrs. Mary Lou Purser, Brinks' mother, wrote that her son suffered an emotional shock and became progressively more upset due to the death of his stepfather. On several occasions Mrs. Purser had returned home to find Brinks sitting and crying, and she believed that he needed professional help. Brinks' sixth grade teacher, Mrs. Dora Lambert, stated that Brinks was abnormal in many ways; that he had a sex problem in the sixth grade; and that "he had all the symptoms of an emotionally disturbed child." In a letter detailing Brinks' various misdeeds, his former school principal described him as having a low I.Q. and a "compulsion for all types of misbehavior." The teacher who taught Brinks in the seventh grade related how the "tendencies which he [Brinks] displayed were not those of an average boy at that age."

In addition to these letters the court had before it a statement by Brinks' attorney that, based on the attorney's own investigation, Brinks appeared to be insane.

After considering all the evidence the Alabama trial court refused to order a sanity investigation. Brinks was then tried before a jury and convicted of robbery. In affirming the conviction the Court of Appeals of Alabama rejected the contention that the trial court erred in failing to grant Brinks a sanity investigation, Brinks v. State, 1967, 44 Ala.App. 266, 207 So.2d 127, and this decision was affirmed by Brinks v. State, 1968, 281 Ala. 716, 207 So.2d 129.

To reach the issues raised by this appeal we must first examine the procedural framework used by the State of Alabama to adjudicate pleas of insanity. In any criminal prosecution the defendant has the burden of proving the defense of insanity "to the reasonable satisfaction of the jury". Title 15, § 422, Code of Alabama, 1940 (Recompiled 1958). After pleading insanity in a capital case the defendant may file a motion for a sanity investigation pursuant to Title 15, § 426, Code of Alabama, 1940 (Recompiled 1958). When necessary the trial judge holds a hearing on this motion and takes evidence for the purpose of determining whether there is "reasonable ground"[2] to believe the accused is insane presently, or that he was insane at the time the offense was committed. If the trial judge finds that there is reasonable ground to doubt the defendant's sanity, an investigation is ordered and the defendant is taken to a state hospital where he is examined by several responsible physicians to determine whether he is legally responsible. However, if the evidence is insufficient to warrant a sanity investigation the court denies the motion and the defendant proceeds to trial. See Pace v. State, 1969, 284 Ala. 585, 226 So.2d 645, and Eaton v. State, 1969, 280 Ala. 659, 197 So.2d 761.

In the Alabama appellate courts the standard of review from such a denial is whether the trial judge abused his discretion in refusing to order the investigation. Pace v. State, supra. The theory behind this procedure is to allow the trial judge to hear all the evidence and then serve as a screening agent to separate the insubstantial claims of insanity from those valid claims which genuinely require a specialized state investigation. Pace v. State, supra.

If he is unsuccessful in appealing the denial of the sanity investigation to the Alabama courts, the defendant may, of course, bring a habeas petition in federal court on the ground that the trial judge's failure to order the investigation constituted an abuse of discretion in violation of the Due Process Clause of the Fourteenth Amendment. Brinks makes this very argument on this appeal, and the brief of the Attorney General of Al-

---

2. Title 15, § 426, Code of Alabama, 1940 (Recompiled 1958).

abama is directed entirely toward showing that, on the facts before the state court, the trial judge was well within his discretion in denying the sanity investigation. The Attorney General would distinguish the several cases [3] which most strongly support Brinks' position on the ground that these cases involved far more evidence of insanity than Brinks was able to present. For example, in Welch v. Beto, 5 Cir. 1966, 355 F.2d 1016, this court held that the State of Texas deprived the defendant of due process of law by failing to order a sanity investigation, but we relied heavily upon expert testimony from a qualified psychiatrist who informed the state court that the accused was insane.

Turning to the evidence which Brinks presented at the state hearing, we note that the testimony was of an ambiguous nature and none of it came from witnesses qualified in the field of psychology or psychiatry. Were this the only evidence that Brinks attempted to bring before the state court we would have no hesitation in holding that the trial judge was within his discretion in refusing the sanity investigation. Indeed, to hold otherwise would be tantamount to removing the discretionary function which the Alabama legislature has placed upon the state's trial judges.

However, apart from his claim that the state arbitrarily denied him a sanity investigation, Brinks advances a second argument which necessitates reversing his conviction. Under the due process and equal protection provisions of the Fourteenth Amendment and the Sixth Amendment's guarantee of effective legal counsel,[4] Brinks contends that, because of his indigency, he was unable to secure expert testimony to present to the state court before it considered whether there was enough evidence to order a sanity investigation. Had he been affluent, or had the state provided him with funds, Brinks claims he could have introduced evidence which would have compelled a sanity investigation.

As we have previously observed the evidence regarding Brinks' mental condition was ambiguous. The behavior attributed to him could very well exemplify the average deviant whom society holds legally responsible for unlawful acts. But on the other hand, we cannot rule out the substantial possibility that the descriptions of Brinks depict a man who, given the chance to obtain expert testimony, could have produced enough evidence to warrant a sanity investigation. Statements such as "He [Brinks] . . . seemed to have a compulsion for all types of misbehavior", compel us to require that Brinks be given at least the opportunity of bringing an expert before the court.

If Brinks were not indigent, or if the state had an available method of obtaining an expert which Brinks did not take advantage of, we could simply assume that expert testimony would have been unfavorable to the petitioner's case and deny relief. But here we have lay testimony revealing some questionable behavioral patterns coupled with a claim by the accused that, given the means to do so, he could have produced an expert who would have shed some light on his mental condition. Under these circumstances, we fail to see how Brinks could have received adequate representation from his appointed attorney. Moreover, the main thrust of the argument of petitioner's counsel in this court is that he could not adequately represent petitioner because of the lack of an available expert witness.

3. Thomas v. Cunningham, 4 Cir. 1963, 313 F.2d 934; United States ex rel. Robinson v. Pate, 7 Cir. 1965, 345 F.2d 691; Welch v. Beto, 5 Cir. 1966, 355 F.2d 1016.

4. As the decisions cited below illustrate, these three constitutional arguments are often interlocked in the type of claim Brinks is asserting:
Griffin v. Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Douglas v. California, 1963, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; McCollum v. Bush, 5 Cir. 1965, 344 F.2d 672, affirming Bush v. McCollum (N.D.Texas 1964), 231 F.Supp. 560; Bradford v. United States, 5 Cir. 1969, 413 F.2d 467; Jacobs v. United States, 4 Cir. 1965, 350 F.2d 571.

We hold, therefore, that the state's failure to provide Brinks with either an expert witness or the funds to obtain one deprived him of both a fair trial and the effective assistance of counsel. McCollum v. Bush, 5 Cir. 1965, 344 F.2d 672, affirming Bush v. McCollum (N.D. Tex.1964), 231 F.Supp. 560. The State of Alabama must either retry Brinks or release him since the lapse of time between his trial and this appeal would make a hearing on incompetency an impractical remedy at this late date. Pate v. Robinson, 1966, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815.[5] If the State of Alabama elects to retry Brinks and he files a new motion for a sanity investigation, the state must provide petitioner with the means of obtaining expert testimony as bearing upon the question of whether or not he is entitled to a sanity investigation.

The district court's denial of the petition is reversed and the case is remanded with directions that the state be afforded a reasonable opportunity to retry petitioner. If the state fails to grant petitioner a new trial, the writ must issue.

Reversed and remanded.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The original opinion is modified in the following respects:

We have reconsidered under a correct legal standard the evidence presented to the trial judge at the hearing on Brinks' motion for a statutory mental competency examination. Our original opinion referred to the standard before the trial court as "whether there is 'reasonable ground' to believe the defendant is *insane* presently, or that he was insane at the time the offense was committed," which is that of Tit. 15, § 425, Code of Alabama (1958 Recomp.). This is more stringent than the standard correctly applicable, i. e., whether there was "reasonable ground to *doubt* [the accused's] sanity." This is the statutory standard of Tit. 15, § 426, Code of Ala. (1958 Recomp.).

Alabama has three different statutory procedures for mental examinations to which reference should be made. Tit. 15, § 428, is unrelated to competency to stand trial and to criminal responsibility at the time of the offense. It is for the beneficient purpose that a person incarcerated (for any number of reasons, not limited to criminal charges) who is mentally ill may be transferred to a hospital for treatment. Ex parte Garrett, 262 Ala. 25, 76 So.2d 681 (1954); Lee v. Alabama, 386 F.2d 97, 106 (5th Cir. 1967) (en banc). Tit. 15, § 425, prescribes a purely advisory procedure available to the trial judge after indictment in a capital case, if the judge thinks it will be helpful, triggered by the presentation to him of the written report of three expert practitioners or of the superintendent of the state hospitals, showing reasonable grounds to believe that the accused was insane at the time of the offense or presently. No hearing is provided for. The inquiry made under § 425 need not even include competency to stand trial. Lee v. Alabama, *supra*, 386 F.2d at 106.

Sec. 428, the treatment section, is not even arguably relevant in this case. As to § 425, while Brinks was charged with robbery, a capital offense in Alabama, Tit. 15, § 415, Code of Alabama (1958 Recomp.), the procedure of this advisory section was not triggered nor was it required to be.

Thus as we concluded in our previous opinion, Brinks' motion fell under Tit. 15, § 426, which provides that "if any person charged with any felony be held in confinement under indictment, and the trial court shall have reasonable

---

5. In Pate v. Robinson, supra, the Supreme Court held that a lapse of six years between trial and appeal prevented a retrospective determination of an accused's competence to stand trial. With the issuance of this decision it will have been approximately five and one-half years since Brinks was tried. The granting of a new trial, therefore, is the only remedy we can consider in this case.

ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of sanity." If the jury finds the accused sane the trial in chief shall proceed. If found insane the accused must be committed to the state hospital where he must remain until restored. If restored he must be remanded to prison, and the criminal proceedings resumed. In no event may he be released so long as the prosecution remains pending or he continues to be insane.[1] § 426, *supra.*

Throughout the case, there has been considerable confusion as to which procedure Brinks was seeking to invoke. The language of his motion closely tracked § 428.[2] Brinks' brief to the habeas court shed no light on the matter. In its brief the state assumed he was proceeding under § 425 or § 426. The order denying the writ referred to no statute but discussed in general terms the right to be examined by a psychiatrist at government expense. Brinks' brief to this court on appeal refers to only § 425, and § 428, and the state's brief only to § 426. We have been indiscriminately referred to cases under the three sections without regard to their fundamental differences in purpose, procedure and result.[3]

■ Before the trial judge suspends the normal course of criminal proceedings and conducts a jury inquiry into the "fact of sanity" there must come to his attention factual data, or allegations of factual data, tending to show "reasonable ground to *doubt* [the accused's] sanity." The court has discretion to determine if the underlying factual basis said to exist does in fact exist, and whether such factual basis constitutes "reasonable ground to *doubt* [the accused's] sanity." If that standard is attained, discretion drops out of the picture—that is, the judge has no discretion to disobey the mandate of the statute if the prerequisites for the mandate are present. In its brief to us the State of Alabama acknowledges that the trial courts of that state have begun to recede from their reluctance to grant sanity investigations and that the Alabama Supreme Court has tempered its former position that refusals were by and large unreviewable.

■ Having reexamined the evidentiary matter presented to the trial judge at the hearing on Brinks' motion, we have no doubt that it met the standard of "reasonable ground to *doubt* [Brinks'] sanity" and that the court exceeded the allowable range of its discretion in denying the valuable right provided by § 426. Our conclusion is reinforced by the fact that the Alabama Court of Appeals reviewed the question under a test of whether the matter presented to the trial judge was sufficient to "establish [Brinks'] insanity." 207 So.2d at 128. This is the very issue that one whose insanity is in doubt is entitled to have decided by a jury.

Turning to the remedy, the State must either retry Brinks or release him. If it elects to retry him, it must accord him the § 426 jury inquiry into the "fact of sanity." A hearing at this time to determine *nunc pro tunc,* if possible, Brinks' mental condition in 1966 [4] is not feasible since the proceedings which Brinks sought required determination by a jury.

---

1. The provisions of § 426 for a separate jury trial on the issue of insanity is a valuable right. Lee v. Alabama, *supra,* 386 F.2d at 107.

2. For example, it refers to a jury "if [the judge] deems it necessary," which is quoted from § 428. A jury is mandatory under § 426 and not provided for at all under § 425.

3. The confusion between these sections is understandable, and shared. *See* Lee v. Alabama, *supra,* 386 F.2d at 101–107. *See also* the opinion of the Alabama Court of Appeals, in Brinks' appeal on the merits, Brinks v. State, 44 Ala.App. 266, 207 So.2d 127, 128 (1967) cert. denied, 281 Ala. 716, 207 So.2d 129, citing Tit. 15, Chapter 21 Article 2, of the Alabama Code, which contains both § 426 and § 428 but not § 425.

4. Lee v. Alabama, *supra;* Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966).

That part of our prior opinion concerning availability to an indigent of expert psychiatric assistance to show his entitlement to an investigation into his sanity, is withdrawn.

The District Court's denial of the petition is reversed and the case is remanded with directions that the state be afforded a reasonable opportunity to retry petitioner, subject to his right to a § 426 jury inquiry, and should the state elect not to do so the writ must issue.

Reversed and remanded.

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.