[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 868 
Obie Russell, Jr., was convicted of assault in the second degree, a violation of § 13A-6-21, Ala. Code 1975, in connection with an attack on Kyra Wycoff on May 15, 1996, in which a knife was used as the weapon. The trial court sentenced Russell to 15 years in the penitentiary.
Russell argues that the trial court erred in denying his motion, filed pursuant to Rule 11.2, Ala. R.Crim. P., seeking a mental evaluation. Russell's defense counsel requested the mental evaluation to determine both whether Russell was capable of appreciating the nature and quality or wrongfulness of his actions at the time of the offense and whether he was competent to stand trial. The motion alleged that Russell exhibited deviant behavior while he was incarcerated. Russell entered an initial plea of not guilty; he later amended his plea to include a plea of not guilty by reason of severe mental disease or defect. Following a hearing in which the defense called one witness, the trial court denied Russell's motion. Russell argues that the trial court abused its discretion in denying his motion. We agree.
If the trial court determines that reasonable grounds exist for a mental examination, the trial court shall appoint a psychiatrist or psychologist to examine the defendant and to report regarding the defendant's mental condition or order that such an examination be conducted by a psychiatrist or psychologist appointed by the commissioner of the Department of Mental Health and Mental Retardation. Rule 11.3(a), Ala. R.Crim. P.
Mental evaluations are also governed by statute.
 "Ala. Code 1975, § 15-16-21, provides in pertinent part:
 " 'If any person charged with any felony is held in confinement under indictment and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity. . . .'
 "This section authorizes the trial court to make a preliminary determination (without the aid of a jury) as to whether there are reasonable grounds to doubt the defendant's competency to stand trial. Ex parte LaFlore, 445 So.2d 932, 934 (Ala. 1983); Richardson v. State, 354 So.2d 1193, 1196
(Ala.Cr.App. 1978). The trial court is, thus, the 'screening agent' for mental examination requests. Livingston v. State, 419 So.2d 270, 274
(Ala.Cr.App. 1982)."
Reese v. State, 549 So.2d 148, 150 (Ala.Cr.App. 1989),overruled on other grounds, Huntley v. State, 627 So.2d 1013
(Ala. 1992). "It is left to the discretion of the trial court as to whether there is a reasonable or bona fide doubt as to sanity and, thus, whether a further examination is required."Waldrop v. State, 459 So.2d 953, 955 (Ala.Cr.App. 1983), aff'd,459 So.2d 959 (Ala. 1984), cert. denied, 471 U.S. 1030,105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). The standard of review is whether the trial court abused its discretion by not requiring an evaluation of Russell's competency to stand trial. See Bakerv. State, 599 So.2d 60, 62 (Ala.Cr.App. 1991).
A trial of an accused who is incompetent violates due process. Wagner v. State, 489 So.2d 623, 628 (Ala.Cr.App. 1985); Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440,100 L.Ed. 835 (1956). Rule 11.1, Ala. R.Crim. P., states:
 "A defendant is mentally incompetent to stand trial or to be sentenced for an offense if that defendant lacks sufficient present ability to assist in his or her defense by consulting with counsel with a *Page 869 
reasonable degree of rational understanding of the facts and the legal proceedings against the defendant."
The trial court makes the ultimate determination of a defendant's competency pursuant to the following standard:
 "The test for determining competency to stand trial is whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.' Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)."
Anderson v. State, 510 So.2d 578, 579 (Ala.Cr.App. 1987). "This determination [of competency to stand trial] should be left to the discretion of the trial court." Baker v. City ofHuntsville, 516 So.2d 927, 931 (Ala.Cr.App. 1987).
Additionally, an indigent defendant is constitutionally entitled to a psychological expert provided at the State's expense where the defendant demonstrates to the trial court that his or her sanity at the time of the offense could be a significant factor at trial. Ake v. Oklahoma, 470 U.S. 68, 86,105 S.Ct. 1087, 1097-98, 84 L.Ed.2d 53 (1985). Where an evaluation by a psychologist or psychiatrist is constitutionally required, such an expert may be appointed under Rule 11.3(a), Ala. R.Crim. P.; Isom v. State,488 So.2d 12, 13 (Ala.Cr.App. 1986). Russell sought a mental examination to evaluate both his competency to stand trial and his mental state at the time of the offense.
At the hearing on his motion requesting a mental evaluation, Russell called Dr. Barbara Keown, an employee at the East Alabama Mental Health Center and a counselor at the Nan Kelley Counseling Center. Dr. Keown testified as an expert in the fields of psychology and counseling. Dr. Keown testified that she had reviewed Russell's records from the Nan Kelley Counseling Center. She testified that Russell's records reflected that he had been diagnosed as suffering from chronic paranoid schizophrenia. Dr. Keown also testified that Russell had sought treatment at the counseling center on four occasions during the three months before the attack of Wycoff. The records indicated that, on these visits to the counseling center, Russell sought treatment for auditory and visual hallucinations and behavioral problems. Russell, who had recently been released from prison, also told the staff at the counseling center that he was having difficulty adjusting to life outside of prison. Dr. Keown testified that Russell was given prescriptions for Prolixin Decanoate, an antipsychotic drug. She testified that his medication was discontinued shortly before the attack on Wycoff because Russell had taken an overdose. Dr. Keown testified that she had personally seen Russell on only one occasion before the hearing and that she was unable to form an opinion as to the extent of his mental illness from that encounter. Dr. Keown testified that, in her opinion, further evaluation would be needed in order to make an informed determination of whether Russell was competent to stand trial and whether he appreciated the nature and quality or wrongfulness of his actions when he attacked Wycoff.
The State, in its cross-examination of Dr. Keown, emphasized that Russell had previously been determined to be competent to stand trial in 1988 and again in 1989, despite his mental illness. The State presented no evidence at the hearing to contradict Dr. Keown's testimony.
It is evident from the following portion of the record of the hearing that the trial court misconstrued Russell's burden of proof on the issue of whether he was entitled to a mental evaluation to determine his competency to stand trial:
 "THE COURT: Do you have access to all of the records wherever you work and that kind of stuff?
 "THE WITNESS [Dr. Keown]: We have records from his contact with our facility.
"THE COURT: Have you reviewed those?
"THE WITNESS: Yes, I have.
 "THE COURT: Are you competent to evaluate the results of those contacts?
"THE WITNESS: I have reviewed the records. *Page 870 
 "THE COURT: Well, the bottom line is simply this: What I want to know is whether or not you can express an opinion based on reasonable medical certainty, based on your personal knowledge, or review of the records that you have access to and that you looked at, that you would normally rely on if you were dealing with this person — is that right?
"A: Yes.
 "Q: — whether or not the defendant lacks sufficient present ability to assist in his or her defense by consulting with counsel with a reasonable degree of rational understanding of the facts and the legal proceedings against the defendant? Are you competent to make that opinion? Express an opinion as to that issue?
"THE WITNESS: I am not sure about that.
"THE COURT: You do not think you can?
 "THE WITNESS: I don't — I have not seen enough of him to know whether he is competent to do that.
Based on reviewing . . . the records, I would guess there may be a problem there.
 "THE COURT: I don't want a guess. I want an opinion. You came up here to testify and give your opinion. I am going to listen to your opinion. If you do not have an opinion, you can just say so. I don't want a guess. Do you have an opinion?
 "THE WITNESS: The only opinion I can give you is when I brought him into my office to sign releases to talk with Mr. Treadwell [defense counsel], he seemed to have difficulty understanding the purposes of the releases and what kind of information, you know, I would be releasing to his attorney.
 "THE COURT: That is not my question. The question is: Can you express an opinion as to the question, which is, does the defendant lack sufficient present ability to assist in his defense by consulting with counsel with a reasonable degree of rational understanding of the facts and legal proceedings against him? Are you prepared to express an opinion on that?
"THE WITNESS: No, I am not.
 "THE COURT: All right. Are you prepared to express an opinion as to whether or not the defendant, as a result of severe mental disease or defect, was able to appreciate the nature and quality or wrongfulness of his acts at the time of the alleged commission of the offense?
"THE WITNESS: No, I am not.
(S.R. 12-14) (emphasis added.)
Russell's burden, for purposes of his motion seeking a mental evaluation paid for by the State, was merely to establish a reasonable doubt as to his competency to stand trial or to establish that his sanity at the time of the offense would be a significant factor at trial. The trial court apparently expected Dr. Keown to testify as to the ultimate issue of Russell's sanity at the time of the offense and his competency to stand trial. The trial court then ruled, not on Russell's request for a mental evaluation, but on the ultimate issue. This was reversible error.
In Ex parte Gordon, 556 So.2d 363 (Ala. 1988), the Alabama Supreme Court held that the defendant had raised sufficient reasonable doubt as to her competence to stand trial where three of her defense attorneys testified at a hearing on her motion requesting a mental examination and expressed their opinions that there was just cause to warrant further mental evaluation of the defendant in order to determine her competency. In the present case, the evidence is even more compelling. Dr. Keown, a mental health expert, testified that Russell was diagnosed as suffering from paranoid schizophrenia; that he had sought treatment for mental illness and had been prescribed antipsychotic medication in the months immediately preceding the attack on Wycoff; that he had been taken off the medication because of an overdose shortly before the attack; and that further mental evaluation of Russell would be necessary to determine his competence to stand trial and his sanity at the time of the offense.
Although the trial court is in a better position than a reviewing court to rule on a defendant's request for a mental evaluation — by virtue of its ability to hear and see the evidence and to observe the defendant — the *Page 871 
record of the hearing on Russell's motion for a mental evaluation clearly raises at least a reasonable doubt as to his competence to stand trial. Additionally, we hold that Russell made a sufficient showing, pursuant to Ake v. Oklahoma, supra, that his mental state at the time of the offense would be a significant factor in his trial. In light of Dr. Keown's testimony at the hearing, we hold that further inquiry into the issues of Russell's competence to stand trial and his mental state at the time of the offense was warranted. The trial court abused its discretion in denying Russell's motion for a mental evaluation.
The dissenting opinion cites Bailey v. State, 421 So.2d 1364
(Ala.Cr.App. 1982), as support for its argument that the trial court did not abuse its discretion in denying Russell's motion for a mental examination on the ground that he had not made the necessary showing that there were reasonable grounds to believe that he was incompetent. We note that Bailey was decided before, and without the benefit of, the United State's Supreme court's decision in Ake v. Oklahoma, supra, which held that an accused is entitled to a mental evaluation if it can be shown that the accused's mental state at the time of the offense is going to be a significant factor at trial.
Moreover, the facts surrounding Bailey and the facts in the present case are distinguishable. A mental health official testified that Bailey exhibited "psychotic-like behavior" in an evaluation conducted one week before the hearing on his motion for a mental examination. Other witnesses testified to the same effect.
Despite the recommendation of the witness who performed the mental evaluation, the Bailey court ruled that further
evaluation was unnecessary and that he was competent to stand trial. In the present case, Russell, who was indigent, relied largely on medical records showing that he had been diagnosed with schizophrenia for several years and had exhibited psychotic behavior immediately before the commission of the offense for which he was on trial. This evidence, combined with Dr. Keown's assessment, however equivocal, was sufficient to entitle Russell to the evaluation he sought. We are aware that the trial court is not bound by the recommendations of experts as to the competency of the accused. Miles v. State,408 So.2d 158, 162 (Ala.Cr.App. 1981), cert. denied, 408 So.2d 163 (Ala. 1982) (relied upon in Bailey.) However, we hold that, in light of the evidence, Russell presented sufficient proof both that there existed a reasonable doubt as to his competency and that his sanity at the time of the offense was to be a significant factor at trial.
For the above-stated reasons, the judgment of the trial court is reversed and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur except BROWN, J., who dissents with opinion.