WELCH, Judge.
 

 Jerry Kenneth Glass was convicted of four counts of reckless endangerment, a violation of § 13A-6-24, Ala.Code 1975, and one count of criminal mischief in the second degree, a violation of § 13A-7-22, Ala.Code 1975; all the counts arose out of one incident in which Glass intentionally struck a vehicle from behind with his vehicle. Glass was sentenced to 32 months in jail on each count, the sentences to be served consecutively. The trial court split the sentence, and ordered Glass to serve
 
 *190
 
 12 months and suspended the 4 remaining years for 2 years.
 

 The evidence adduced at trial tended to show the following. In the spring of 2007, Glass’s wife left him, and Glass believed she was seeing another man. Glass’s behavior became erratic. One night in the week before the incident made the basis of this prosecution, Glass telephoned a friend, Melanie Phillips, and asked her to drive him to a restaurant because he believed that his wife would be there with the man. Phillips testified that as they drove, Glass kept looking into cars and asking her to follow some, looking for his wife. In the restaurant parking lot, Phillips said, Glass would look into cars or go up to groups of people leaving the restaurant thinking his wife was with them. Phillips eventually left Glass in the parking lot at about 11:00 p.m. She then telephoned his parents and described his behavior to them.
 

 Christy Claunch, an assistant manager at the restaurant, testified that she received a telephone call from Glass’s father asking her to check on Glass. She said she found Glass in the parking lot, and that he ran toward her from some bushes. He yelled at her to stay away from a certain car, because, Glass told her, it belonged to his wife. Claunch said that actually, the car belonged to one of her employees. She said that Glass also believed that he saw his wife in several cars in the parking lot. She waited with Glass until his parents arrived. Glass then got in their car and left.
 

 Claunch described Glass as “scruffy,” and she said that he was nervous and excited. She testified that she did not smell any alcohol about him, but that, based upon his behavior, she suspected he was under the influence of drugs.
 

 Some nights later, on the night of March 17 or in the early morning hours of March 18, 2007, a group of four teens who had attended the senior prom at Lexington High School were traveling back and forth on Highway 71 going to a friend’s house for a post-prom party after having picked up a video game at another friend’s house. Josh Hunt was driving the group in his father’s Ford F-150 pickup truck.
 

 Phillips and several other people, including Glass’s sister, Amanda, were at Glass’s house that same night. Amanda said that Glass received a telephone call from his wife and that his wife apparently taunted Glass about his Chevrolet Tahoe sport-utility vehicle. Phillips said the group at Glass’s house saw a white pickup truck drive down the highway in front of the house three times, and Glass became convinced that his wife was in the truck. He left the house and drove off in the Tahoe, following the pickup truck.
 

 Hunt testified that as he was returning to the party, he saw a truck pull up behind him flashing its headlights. Hunt said he pulled over to the side of the road, put his head out the driver’s side window, and saw Glass, whom he knew, walking toward him. Glass was “screaming and hollering,” and Hunt drove off. Glass got back into the Tahoe and chased Hunt’s pickup truck down the highway.
 

 Hunt said that as they traveled down the highway, Glass began bumping the back end of the truck with his Tahoe. The bumps got progressively harder. Hunt said Glass would let a short distance develop between the vehicles, then Glass would accelerate and hit the truck. Hunt estimated that the truck was hit between 5 and 10 times. Eventually Glass turned around and Hunt and his friends continued on to their friend’s house.
 

 Diane Gower, who lives near Glass, testified that on the night of the prom at Lexington High School, she was awakened about 1:00 a.m. by the sound of her door
 
 *191
 
 slamming. She said Glass was at her door saying that he had chased a truck he thought was his wife was in so that he could run it off the road, but that his wife had not been one of the occupants. Gower said that Glass told her he had been drinking and that he did not want to be arrested for driving under the influence of alcohol but that he planned to turn himself in the next morning. Gower confirmed that Glass smelled of alcohol and that he acted as though he was drunk.
 

 Ronnie Hunt, Josh’s father, testified that he allowed Josh to drive the Ford F-150 the night of the prom. He said that he had an estimate from a body shop that repairs to the truck as a result of the incident would cost about $2,000.
 

 I.
 

 Glass contends that the trial court erred in denying his motion for a mental examination to determine his competence on the night of the offense. Specifically, Glass argues that he presented sufficient evidence at a hearing on his motion to call into question his competency on that night.
 

 “ “
 
 ‘A defendant does not have a right to a mental examination whenever he requests one, and, absent such a right, the trial court is the screening agent of such requests.
 
 Robinson v. State,
 
 428 So.2d 167 (Ala.Crim.App.1982);
 
 Beauregard v. State,
 
 372 So.2d 37 (Ala.Cr.App.), cert. denied, 372 So.2d 44 (Ala.1979). The defendant bears the burden of persuading the court that a reasonable and bona fide doubt exists as to the defendant’s mental competency, and this is a matter within the discretion of the trial court.
 
 Miles v. State,
 
 408 So.2d 158 (Ala.Crim.App.1981), cert. denied, 408 So.2d 163 (Ala.1982). In determining whether an investigation into the defendant’s [competency] is required, the trial court must determine if any factual data establish a reasonable ground to doubt the defendant’s [competency].
 
 Beauregard,
 
 372 So.2d at 43. Where the trial court finds that the evidence presents no reasonable grounds to doubt the defendant’s [competency], the standard of appellate review is whether the trial court abused its discretion.
 
 Id.”
 

 “ ‘Cliff v. State,
 
 518 So.2d 786, 790 (Ala.Crim.App.1987). See also
 
 Stewart v. State,
 
 562 So.2d 1365 (Ala.Crim.App.1989);
 
 Russell v. State,
 
 715 So.2d 866 (Ala.Crim.App.1997); Ala. R.Crim.P. 11.’
 

 “Ingram v. State,
 
 779 So.2d 1225, 1270-71 (Ala.Crim.App.1999), aff’d, 779 So.2d 1283 (Ala.2000).”
 

 Harrison v. State,
 
 905 So.2d 858, 861 (Ala.Crim.App.2005).
 

 “Only when the evidence presents a sufficient doubt as to the defendant’s sanity is an investigation into his sanity required.
 
 Buttram v. State,
 
 338 So.2d 1062 (Ala.Crim.App.1976);
 
 Gales v. State,
 
 338 So.2d 436 (Ala.Crim.App.), cert. denied, 338 So.2d 438 (Ala.1976);
 
 Buttram v. State,
 
 57 Ala.App. 425, 329 So.2d 114, cert. denied, 295 Ala. 394, 329 So.2d 116 (1976).
 

 “ ‘Before the trial judge suspends the normal course of criminal proceedings and conducts a jury inquiry into the “fact of sanity” there must come to his attention factual data, tending to show “reasonable ground to doubt (the accused’s) sanity.” The court has discretion to determine if the underlying factual basis said to exist does in fact exist, and whether such factual basis constitutes “reasonable ground to doubt (the accused’s) sanity.” ’
 
 Brinks v. Alabama,
 
 465 F.2d 446, 450, (5th Cir.1972), cert.
 
 *192
 
 denied, 409 U.S. 1130, 93 S.Ct. 940, 35 L.Ed.2d 263 (1972).
 

 “Where the trial court finds that there are no reasonable grounds to doubt the accused’s sanity, the standard of appellate review is whether the trial judge abused his discretion.
 
 Pace v. State,
 
 284 Ala. 585, 226 So.2d 645 (1969);
 
 Wheeler v. State,
 
 47 Ala.App. 457, 256 So.2d 197 (1971).
 

 “In determining whether a reasonable doubt as to sanity exists, the trial judge may make investigation and hear evidence.
 
 Thomas v. State,
 
 357 So.2d 1015, 1018 (Ala.Crim.App.1978).”
 

 Beauregard v. State,
 
 372 So.2d 37, 43 (Ala.Crim.App.1979).
 

 “In
 
 Ake v. Oklahoma,
 
 the United States Supreme Court held that ‘when a defendant demonstrates, to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination.... ’
 
 Ake v. Oklahoma,
 
 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).”
 

 Burgess v. State,
 
 962 So.2d 272, 291 (Ala.Crim.App.2005).
 

 To show legal insanity at the time of the offense, Glass would have to demonstrate that he “suffered from a mental disease or defect preventing him from appreciating the nature and quality or wrongfulness of his acts.”
 
 Morris v. State,
 
 956 So.2d 431, 442 (Ala.Crim.App.2005);
 
 Flowers v. State,
 
 922 So.2d 938, 956 n. 4 (Ala.Crim.App.2005); § 13A-3-1(a), Ala.Code 1975.
 

 In this case, the trial court held a hearing on Glass’s motion seeking a mental examination to determine his competency at the time of the offense. Glass presented evidence tending to show that in the week before the incident made the basis of this prosecution, he had exhibited odd behavior. His wife had left him, and he believed she was seeing another man. As a result, he was depressed and upset. Glass believed he saw his wife in various vehicles as he rode around town. He also believed that she would be at a certain restaurant one night, so he watched the cars in the restaurant parking lot, believing his wife to be in the cars or with people who were leaving the restaurant.
 

 Phillips said that a few days after Glass had her drive him to the restaurant, she made an appointment for him to see a physician, Dr. Wompler. She testified that Dr. Wompler prescribed Ativan, an anti-anxiety medication, for Glass, but that Glass had an adverse reaction to the drug, and a prescription for Paxil was substituted for Ativan. Dr. Wompler did not testify at the hearing, but the prosecutor offered into evidence a letter written by Dr. Wompler stating he first prescribed anti-anxiety medication on March 12, 2007. Glass agreed to the admission of the letter, and it was received into evidence.
 

 From this evidence, the trial court could have found that Glass failed to present a factual basis that there were reasonable grounds to doubt his sanity or competency at the time of the offense. Glass’s evidence indicated that he acted in an odd manner on one night about a week before he intentionally struck Hunt’s truck. Evidence regarding his behavior the night of the incident, however, tends to show that he was not acting oddly, but that he became agitated when his wife telephoned to taunt him about his Tahoe. He saw a truck pass his house a number of times and believed his wife was in it, so he went after the truck to confront her.
 

 Glass presented no medical or expert testimony that would indicate that he suffered from a mental disease or defect and that he was unable to appreciate the na
 
 *193
 
 ture and quality of the wrongfulness of his act.
 

 Based on the evidence in the record, we find that the trial court did not abuse its discretion in finding that Glass failed to demonstrate that there were reasonable grounds to doubt his sanity at the time of the offense and that Glass’s sanity at the time of the offense would not be a significant factor at trial.
 

 II.
 

 Glass contends that he was not allowed to present a complete defense in this case because, he says, in denying his motion for a mental examination, the trial court improperly made the ultimate decision as to whether he in fact suffered from a mental disease or defect rather than deciding whether a mental examination was proper.
 

 As mentioned above, “‘[a] defendant does not have a right to a mental examination whenever he requests one, and, absent such a right, the trial court is the screening agent of such requests.
 
 Robinson v. State,
 
 428 So.2d 167 (Ala.Crim.App.1982).’ ”
 
 Ingram v. State,
 
 779 So.2d 1225, 1270 (Ala.Crim.App.1999) (quoting
 
 Cliff v. State,
 
 518 So.2d 786, 790 (Ala.Crim.App.1987)). Here, the trial court properly acted as the “screening agent” when it determined that there was insufficient evidence from which to find a reason to doubt Glass’s sanity at the time of the offense. We have already determined that the trial court did not abuse its discretion in denying Glass’s request for a mental examination. This issue is without merit.
 

 III.
 

 Glass contends that he was improperly convicted of and sentenced for multiple counts of reckless endangerment although, he says, he committed only a single offense and that those convictions and sentences therefore violate the prohibition against double jeopardy. Because the convictions violate double-jeopardy principles, Glass claims, the trial court did not have jurisdiction to sentence him for each conviction.
 

 The Alabama Supreme Court has previously decided this issue adversely to Glass.
 

 “In
 
 [Ex parte
 
 ]
 
 McKinney,
 
 [511 So.2d 220] [ (Ala.1987) ], the Alabama Supreme Court adopted the position of the majority of states that allow for multiple convictions when more than one person is injured as the result of a single act. In so holding, the
 
 McKinney
 
 court stated:
 

 “ ‘Adoption of the majority view would place Alabama among those states that have recognized that punishment for a criminal act should be commensurate with the act itself and the injury caused by that criminal act. Absent statutory or constitutional obstacles to the adoption of the majority view, logic and reason persuade us to henceforth apply the principle that a single criminal act that causes injury to more than one person may constitute more than one offense and may support more than one prosecution and conviction.
 

 “ ‘... [W]e also hold that henceforth §§ 13A-l-8(b) and 15-3-8 will allow more than one prosecution and conviction when more than one person is injured as a result of a single criminal act.’
 

 “McKinney, supra, at 225.”
 

 Sims v. State,
 
 663 So.2d 975, 978 (Ala.Crim.App.1994). The Alabama Supreme Court has also explicitly recognized that the majority view adopted in
 
 McKinney
 
 also permits multiple convictions in cases in which the defendant acted with reckless intent.
 
 McKinney,
 
 511 So.2d at 223.
 

 Glass’s argument in this case ignores the fact that he placed the well-being of four
 
 *194
 
 people at risk when he rammed the pickup truck with his sport-utility vehicle. In other words, four people were harmed by his reckless conduct; therefore, under
 
 Ex parte McKinney,
 
 511 So.2d 220 (Ala.1987), four convictions of reckless endangerment were warranted in this case. Furthermore, because Glass’s convictions did not violate double-jeopardy principles, the trial court properly sentenced him for each of the four counts of reckless endangerment for which he was convicted.
 

 IV.
 

 Glass contends that the State presented insufficient evidence to sustain his conviction for criminal mischief in the second degree. Specifically, Glass contends that the State failed to prove that the amount of damages incurred in the incident reached the threshold amount for a conviction of second-degree criminal mischief.
 

 “A person commits the offense of criminal mischief in the second degree if, with intent to damage property, and having no right to do so or any reasonable ground to believe that he or she has such a right, he or she inflicts damages to the property in an amount which exceeds five hundred dollars ($500) but does not exceed two thousand five hundred dollars ($2,500).”
 

 § 13A-7-22(a), Ala.Code 1975.
 

 During the trial of this case, Ronnie Hunt, the owner of the pickup truck, testified that he was going to have to pay $2,000 to have the damage to the truck repaired. Glass objected on the grounds of hearsay after the answer was given but did not move to strike the response; thus, any error in admitting hearsay evidence of the estimate to repair the vehicle was not preserved.
 

 On appeal, Glass argues that evidence of repair cost is not a proper method of proving the amount of damage to property under § 13A-7-20-23, Ala.Code 1975.
 

 Glass did not present this specific argument to the trial court, and thus it was not preserved for the purpose of appeal.
 

 A motion for a new trial will not preserve for appellate review issues that arose during trial that were not objected to at the time they arose. See
 
 Trawick v. State,
 
 431 So.2d 574, 578-79 (Ala.Crim.App.1983) (“The grounds urged on a motion for a new trial must ordinarily be preserved at trial by timely and specific objections.”). The motion for a new trial was denied on the day it was filed, apparently without a hearing.
 

 V.
 

 Glass was convicted and adjudged guilty of five separate Class A misdemeanors. The trial court sentenced him to 5 consecutive 12-month terms in the county jail. However, the court then treated the 5 separate sentences as one 5-year sentence and suspended all but 12 months of the sentence under the split-sentence act. The court did not impose any probationary term on Glass during the period of the suspension.
 

 There is no authority allowing the court to aggregate separate misdemeanor sentences and treat them as one sentence in the aggregate under the split-sentence act.
 

 If a sentence is outside the limit provided by statute then no objection has to be made to preserve this issue for review.
 
 Ex parte Brannon,
 
 547 So.2d 68 (Ala.1989). We are required to notice an illegal sentence and remand to the sentencing court for a proper sentence. See, e.g.,
 
 Kennedy v. State,
 
 929 So.2d 515, 523 (Ala.Crim.App.2005); and
 
 Mosley v. State,
 
 986 So.2d 476 (Ala.Crim.App.2007).
 

 Based on the foregoing, Glass’s convictions are affirmed. However, because his
 
 *195
 
 sentence is illegal, we remand this cause for the circuit court to resentence Glass in a manner consistent with this opinion. Due return shall be made to this Court within 35 days of the release of this opinion.
 

 AFFIRMED AS TO CONVICTIONS; REMANDED AS TO SENTENCING.
 
 *
 

 BASCHAB, P.J., and McMILLAN and WISE, JJ., concur.
 

 SHAW, J., concurs in the result.
 

 *
 

 Note from the reporter of decisions: On August 22, 2008, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On October 10, 2008, that court denied rehearing, without opinion. On February 13, 2009, the Supreme Court denied certiorari review, without opinion (1080118).