PER CURIAM.
The appellant, Kevin Cook, was convicted of first-degree burglary, a violation of § 13A-7-5, Ala.Code 1975, and was sentenced pursuant to the Habitual Felony Offender Act to life imprisonment. This appeal followed.
The State’s evidence tended to show the following: On February 26, 2008, at approximately 9:00 p.m., an individual the victim, S.W., later identified as Cook, came through the front door[1] of her residence, jumped on her as she was sitting on a sofa near the door, and attempted to rip off the T-shirt she was wearing. When Cook was unsuccessful in ripping the T-shirt off he pulled out a knife and tried to cut the shirt off. S.W. testified that while Cook was holding her down he kept repeating that he wanted to “f— her” and “e— her.” (R. 188-89.) During the struggle, Cook hit S.W. in the head with a lamp and she struck him with a eandleholder. S.W.’s dog also grabbed Cook’s pants leg and S.W. began throwing things at Cook. Cook then left through the front door. As he was leaving he said, “ ‘I’ll be back after you, you white b-’” and “‘I’m not through with you yet.’ ” (R. 191.) S.W. sustained injures to her head and cuts as a result of the attack.
Cook did not testify at trial. The defense called Dr. Barry Collins, a physician who treated Cook while he was incarcerated at the Talladega County jail. Dr. Collins testified that he was called to the jail on April 3, 2009, to examine Cook because Cook was on suicide watch. He stated that Cook had a history of schizophrenia with bipolar tendencies and that he had been treated for those disorders. Dr. Collins prescribed Thorazine, an antipsychotic; Depakote, a mood stabilizer; Cogentin, for the side effects of the Thorazine; and Prozac for depression because Cook had taken those medications in the past. He stated that if Cook was not taking his medications, he would not know the difference between right or wrong. However, on cross-examination, Dr. Collins testified that, at the time that he evaluated Cook in the jail after the instant offense, he believed that Cook understood right from wrong. When asked if he had any knowledge concerning Cook’s mental state at the time of the offense, Dr. Collins testified:
“Given his prior history and that schizophrenia has less than a 13 percent remission rate, I would assume that he would still be schizophrenic based— when I saw him that day that he still displayed flights of ideas being he was schizophrenic on that day, that he had the same mental illness that he’s been diagnosed with over the last several years.”
(R. 270.) When asked about Cook’s actions during the burglary, Dr. Collins said that Cook may have been experiencing a manic episode.
On appeal, Cook raises one issue. He argues that the circuit court erred in denying his pretrial motion for a court-ordered mental evaluation to determine his mental competency at the time of the offense. The State asserts that the trial court did not abuse its discretion in denying Cook’s request for a mental evaluation.[2]
*674 Section 15-16-21, Ala.Code 1975, provides, in pertinent part:
“If any person charged with any felony is held in confinement under indictment and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity....”
Rule 11.2(a)(2), Ala. R.Crim. P., provides:
“Mental Condition at Time of Offense. If the defendant has timely raised a defense of ‘not guilty by reason of mental disease or defect’ either by the entry of a plea or by filing a pre-trial motion pursuant to Rule 15, the court on its own motion may order, or the defendant, the defendant’s attorney, or the district attorney may move for an examination into the defendant’s mental condition at the time of the offense.”
The United States Supreme Court in Ake v. Oklahoma, 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), first recognized that an indigent defendant may be entitled to the assistance of a mental-health expert. The Court stated:
“FNfhen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the State the decision on how to implement this right.”
(Emphasis added.) Alabama courts have consistently followed the Ake v. Oklahoma holding:
“[A]n indigent defendant is constitutionally entitled to a psychological expert provided at the State’s expense where the defendant demonstrates to the trial court that his or her sanity at the time of the offense could be a significant factor at trial. Ake v. Oklahoma, 470 U.S. 68, 86, 105 S.Ct. 1087, 1097-98, 84 L.Ed.2d 53 (1985). Where an evaluation by a psychologist or psychiatrist is constitutionally required, such an expert may be appointed under Rule 11.3(a), Ala. R.Crim. P.; Isom v. State, 488 So.2d 12, 13 (Ala.Cr.App.1986).”
Russell v. State, 715 So.2d 866, 869 (Ala.Crim.App.1997). See also Glass v. State, 14 So.3d 188 (Ala.Crim.App.2008); Morris v. State, 956 So.2d 431 (Ala.Crim.App.2005); Burgess v. State, 962 So.2d 272 (Ala.Crim.App.2005); White v. State, 900 So.2d 1249 (Ala.Crim.App.2004); Nicks v. State, 783 So.2d 895 (Ala.Crim.App.1999); May v. State, 710 So.2d 1362 (Ala.Crim.App.1997); Jones v. State, 680 So.2d 964 (Ala.Crim.App.1996); Dubose v. State, 662 So.2d 1156 (Ala.Crim.App.1993); Ford v. State, 630 So.2d 111 (Ala.Crim.App.1991); McGahee v. State, 554 So.2d 454 (Ala.Crim.App.1989).
“Before the trial judge suspends the normal course of criminal proceedings and conducts a jury inquiry into the ‘fact of sanity’ there must come to his attention factual data, or allegations of factual data, tending to show ‘reasonable ground to doubt [the accused’s] sanity.’ ”
Brinks v. State of Alabama, 465 F.2d 446, 450 (5th Cir.1972), quoted in part in Glass v. State, 14 So.3d at 191-92 (emphasis added).
At arraignment, Cook entered a plea of not guilty by reason of mental disease or *675 defect, and he requested that he he permitted to undergo a mental evaluation. The circuit court conducted a hearing on the motion. During the hearing, Cook’s counsel introduced medical records from the Alabama Department of Corrections. The prison records showed that Cook had received psychotropic medications while incarcerated on a previous offense and that he had a history of “depressed feelings” and “paranoid ideas,” as well as “diagnosis [of] schizophrenia, bipolar.” (R. 7-8.) The records also showed that Cook was “intellectual functioning borderline!,] memory, borderline.” (R. 9.) Trial counsel also stated that Cook had a “history of [taking] psychotropic medication and previous psychiatric hospitalizations.” (R. 9.) Counsel stated:
“I don’t know if he really understands the — I guess, the gravity of the charges that are against him, but also his mental state at the time that this was committed. I believe that he was on medication up until the time he was released from St. Clair. And once he was out, he was not on any medication.”
(R. 10.) Counsel also informed the court that Cook’s cousin had told her that he picked Cook up when he was released from St. Clair Correctional Facility, shortly before the burglary, and that he believed that Cook was not taking his medications at that time.
At the conclusion of the hearing, the circuit court informed the parties that it would review the records counsel had introduced at the hearing. Thereafter, the circuit court entered the following order denying the motion for a mental evaluation:
“This matter coming on before the Court on the 26th day of January 2009 based on [Cook’s] Motion for Court ordered Mental Examination; the presence of the District Attorney; the presence of counsel for the Defendant; counsel for [Cook] introducing Defendant’s Exhibit # 1 containing medical records from the Alabama Department of Corrections and a prior Forensic Evaluation Report dated the 25th of February, 1998; statements made in open court; the Court having taken judicial knowledge of its file; and upon consideration thereof, the Court finds as follows:
“1. [Cook] previously had before the Circuit Court of Talladega County, Alabama Case No. CC-1997-079 for Burglary in the First Degree, and Case No. CC-1997-080 for Attempted Burglary in the Second Degree. These cases were before then Presiding Circuit Judge Jerry Fielding. Judge Fielding ordered a mental evaluation of [Cook] and subsequently received a report that clearly indicated that [Cook] was able to assist his counsel in the defense of these cases and was not suffering from a severe mental disease or defect.
“2. Subsequent to the disposition of the aforesaid two cases before Judge Fielding, [Cook] had a case before the undersigned Circuit Judge and no request was made for a mental evaluation. Subsequent to that case, [Cook] had two felony cases before Judge Fielding and no request was made for a mental examination. Subsequent to those two cases, [Cook] had a felony case before Judge William E. Hollings-worth, III and no request was made for a mental examination.
“8. The Court has reviewed the medical records from the Alabama Department of Corrections that were introduced as Defendant’s Exhibit # 1. The Court’s review included *676 the prior Forensic Evaluation Report of [Cook]. This Court finds that there are no reasonable grounds for a mental examination of [Cook] and the Motion is due to be denied.”
(C. 14-15.) Subsequently, Cook filed a motion for funds for an expert psychologist or psychiatrist and a motion to continue. (C. 17-22.) The case action summary sheet does not indicate that the circuit court formally ruled on those motions; however, it appears that the circuit court believed that it had denied the motions.
Before Cook would be entitled to a mental evaluation to inquire into his competency at the time of the offense, he was required to show reasonable grounds to doubt his competency. See Ake v. Oklahoma, 470 U.S. at 83. This standard was met in this case. The record shows that Cook pleaded not guilty by reason of mental disease or defect, that Cook’s prison medical records reflected that he had a history of schizophrenia, that he had been treated and was taking medications for that condition while he was incarcerated, and that shortly before the burglary he was released from prison and may not have been taking his medication. “Before the trial judge suspends the normal course of criminal proceedings and conducts a jury inquiry into the ‘fact of sanity' there must come to his attention factual data, or allegations of factual data, tending to show ‘reasonable ground to doubt [the accused’s] sanity.’ ” Brinks, 465 F.2d at 450.
The circuit court had sufficient facts before it from which to conclude that there were reasonable grounds to doubt Cook’s mental competency at the time of the offense. Indeed, the record shows that Cook’s mental health was a significant factor at his trial. The circuit court abused its discretion in denying Cook’s motion for a mental evaluation. “[T]he evidence presented to the trial court warranted further inquiry into [the defendant’s] mental competence.” Ex parte Gordon, 556 So.2d 363, 365 (Ala.1988). Cook is entitled to a new trial. See Ake v. Oklahoma, 470 U.S. at 87.
Accordingly, Cook’s conviction is hereby reversed and this case is remanded to the circuit court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WISE, P.J., and WELCH, WINDOM, and KELLUM, JJ., concur; MAIN, J., dissents, with opinion.

. S.W. testified that she thought that she had shut and locked the front door. However, she said that it was hard to shut the door because the house was being remodeled and the door had been replaced and repainted.

. We note that, although Cook raised the issue of his competency to stand trial below, he appears to have abandoned that issue on appeal because he claims error only in the trial court's failure to order a mental evaluation to determine his competency at the time of the commission of the offense.